*112 [[Image here]]
This case presents a fundamental question that appellate courts often confront: whether to afford relief on the basis of a claim of error not raised in the trial court. As a general rule, appellate courts will not grant relief on belated claims of error unless the proponent establishes, among other things, that the unpreserved error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Defendant here, who raised for the first time on appeal a claim that the trial court gave the wrong juror’s oath, has failed to meet this burden. Our review of the record reveals that the jurors were conscious of the gravity of the task before them and the manner in which that task was to be carried out, the two primary purposes served by the juror’s oath. Thus, we cannot say that the error here of failing to properly swear the jury seriously affected the fairness, integrity, or public reputation of the judicial proceedings. We therefore vacate the Court of Appeals’ order holding to the contrary and reinstate defendant’s convictions and sentences.
I. FACTS AND HISTORY
On February 28,2012, Ashley Conaway and Abreeya Brown were abducted, tortured, and murdered. A month later, their bodies were found buried in a shallow grave, and defendant Brandon Cain and four others were charged in connection with the victims’ deaths.[1] All five men were tried at a single trial with two separate juries, one for Cain and a codefendant *113 and another for the remaining codefendants. After three days of jury voir dire, defendant’s jury was selected. At the start of trial, the court instructed the jury, “I will now ask you to stand and swear to perform your duty to try the case justly and to reach a true verdict.” The clerk proceeded to swear in the jury, but mistakenly read the oath given to prospective jurors before voir dire:
The Clerk: You do solemnly swear or affirm that you will true answers make to such questions as may be put to you touching upon your qualifications to serve as jurors in the cause now pending before the Court [sic]?t[2]1
[Jurors]: (Collectively) I do.
There was no objection to the failure to administer the proper oath, although no one disputes that the oath given was incorrect.[3]
A lengthy trial followed, at the end of which the jury convicted defendant as charged. He was sentenced to mandatory terms of life in prison without parole for the murder convictions and various lesser term-of-years sentences for the remaining convictions. On appeal, defendant raised for the first time a challenge to the trial court’s failure to properly swear the jury. Defendant’s appellate counsel filed a motion for peremptory reversal of his convictions, which the Court of Appeals granted in an order, stating, “The failure to properly swear the jury is a structural error requiring a new trial. People v Allan, 299 Mich App 205; 829 NW2d 319 (2013).” People v Cain, unpublished order of the Court of Appeals, entered May 2, 2014 (Docket No. 314342). The Court remanded “for a new trial with a properly sworn jury.” Id.
*114 The prosecutor then sought an appeal in this Court, and we granted leave to appeal on the following question:
[WJhether the Court of Appeals erred in determining that the failure to properly swear the jury, even in the absence of a timely objection, is a structural error requiring a new trial. [People v Cain, 497 Mich 861 (2014).]
II. STANDARD OF REVIEW
Whether the failure to properly swear the jury, even in the absence of a timely objection, requires that the defendant be afforded a new trial is a question of law, and such questions are reviewed de novo. People v Chenault, 495 Mich 142, 159; 845 NW2d 731 (2014).
III. ANALYSIS
A. UNPRESERVED ERRORS
Defendant did not object to the trial court’s failure to properly swear the jury. His claim on appeal and the Court of Appeals’ decision to afford relief therefore implicate the general and longstanding rule in Michigan that “issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.” People v Grant, 445 Mich 535, 546; 520 NW2d 123 (1994). The essential justification for this rule is fairness, both to litigants, who are best equipped to respond to alleged errors at the time they occur, and to the public, which must bear the cost of new trials that could have been avoided with a timely objection. See People v Carines, 460 Mich 750, 764-765; 597 NW2d 130 (1999) (“[A] contemporaneous objection provides the trial court ‘an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and *115 would be by far the best time to address a defendant’s constitutional and nonconstitutional rights.’ ”), quoting Grant, 445 Mich at 551. As this Court recently explained in People v Vaughn, 491 Mich 642, 653-654; 821 NW2d 288 (2012): “This Court ‘has long recognized the importance of preserving issues for appellate review.’As a result, ‘[t]his Court disfavors consideration of unpreserved claims of error,’ even unpreserved claims of constitutional error.” (Citations omitted; alteration in original.)
The United States Supreme Court has also long recognized the importance of preserving issues for appellate review. As it has explained:
If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; “anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.”
This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from “ ‘sandbagging ” the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor. [Puckett v United States, 556 US 129, 134; 129 S Ct 1423; 173 L Ed 2d 266 (2009) (citations omitted).]
This is why the United States Supreme Court and this Court adopted the plain-error test in United States v *116 Olano, 507 US 725, 735-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993), and Carines, 460 Mich at 763, respectively, and why Vaughn, 491 Mich at 655, held that “ [although the violation of the right to a public trial is among the limited class of constitutional violations that are structural in nature,” a defendant is still not entitled to relief unless he or she can satisfy the four requirements set forth in Carines.
Appellate courts may grant relief for unpreserved errors if the proponent of the error can satisfy the “plain error” standard, which has four parts (the “Carines prongs”). The first three Carines prongs require establishing that (1) an error occurred, (2) the error was “plain”—i.e., clear or obvious, and (3) the error affected substantial rights—i.e., the outcome of the lower court proceedings was affected. Carines, 460 Mich at 763. If the first three elements are satisfied, the fourth Carines prong calls upon an appellate court to “exercise its discretion in deciding whether to reverse,” and (4) relief is warranted only when the court determines that the plain, forfeited error resulted in the conviction of an actually innocent defendant or “ ‘ “seriously affect [ed] the fairness, integrity or public reputation of [the] judicial proceedings”. . . .’ ” Id. (citation omitted; first alteration in original). While “[m]eeting all four prongs is difficult, ‘as it should be,’ ” Puckett, 556 US at 135, the plain-error test affords defendants sufficient protection because, as Vaughn, 491 Mich at 655 n 42, explained:
[Application of a plain-error analysis to unpreserved structural error does not deny that error “close consideration,” . .. especially because the plain-error analysis ... requires reviewing courts to consider carefully whether any forfeited error either resulted in the conviction of an *117 actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [Citations omitted.]
In the present case, the parties generally agree that the trial court’s failure to properly swear the jury constitutes a plain error that satisfies the first and second Carines prongs.[4] The parties disagree, however, about the third and fourth Carines prongs. We need not *118 resolve the parties’ dispute over the third Carines prong because, even assuming defendant has established that element, we are not persuaded that the trial court’s failure to properly swear the jury seriously *119 affected the fairness, integrity, or public reputation of the judicial proceedings in this case and defendant does not even argue that he is actually innocent.
B. FOURTH CARINES PRONG
The fourth Carines prong embodies the general rule that an appellate court will not correct errors that a party failed to raise below. Keversal is required only in the most serious cases, those in which the error contributed to the conviction of an actually innocent person or otherwise undermined the fairness and integrity of the process to such a degree that an appellate court cannot countenance that error. See Olano, 507 US at 736 ("[T]he discretion conferred by [the fourth prong of the plain-error standard] should be employed in those circumstances in which a miscarriage of justice would otherwise result.”) (quotation marks and citation omitted).
A recent example of this Court’s application of the fourth Carines prong can be found in Vaughn. In Vaughn, this Court addressed an unpreserved claim that the trial court violated the defendant’s Sixth Amendment right to a public trial when it closed the courtroom before jury voir dire. Agreeing with the defendant that his claim satisfied the first three prongs of the Carines test, we nonetheless concluded that reversal was not appropriate under the fourth Carines prong because the underlying purposes of the public-trial guarantee were alternatively maintained. Vaughn, 491 Mich at 664-669. These goals, at least in the context of jury voir dire, included “ensuring a fair trial” and “reminding the prosecution and court of their responsibility to the accused and the importance of their functions[.]” Id. at 667. With these goals in mind, this Court reviewed the transcript of the pro *120 ceedings and concluded “that both parties engaged in a vigorous voir dire process, that there were no objections to either party’s peremptory challenges of potential jurors, and that each party expressed satisfaction with the ultimate jury chosen.” Id. at 668. We also observed that the presence of the jury venire, which was derived from and representative of the public, helped to ensure that the proceedings were subject to a substantial degree of continued public review. Id. From our intensive review of the record, we could not conclude that the erroneous closure “seriously affected the fairness, integrity, or public reputation of judicial proceedings,” id. at 668-669, and therefore declined to grant relief.[5] (Quotation marks and citation omitted.)
*121 As evidenced by Vaughn, the fourth Carines prong is meant to be applied on a case-specific and fact-intensive basis. See also Puckett, 556 US at 142 (“[A] per se approach to plain-error review is flawed.”) (quotation marks and citation omitted). The operative inquiry is whether the trial court’s error of failing to properly swear the jury in the particular case “seriously affected the fairness, integrity, or public reputation of judicial proceedings.” Carines, 460 Mich at 774. It is to that inquiry that we now turn.
C. APPLICATION
Consistently with Vaughn, we must first discern the purposes and goals of the juror’s oath. The language of the juror’s oath reads:
“Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God.” [MCR 2.511(H)(1). See also MCL 768.14.]
The oath imposes on the jurors three duties: (1) to “justly decide the questions submitted,” (2) to “render a true verdict,” and (3) to do these things “only on the evidence introduced and in accordance with the instructions of the court.” Of course, the oath is more than a mere laundry list of juratorial duties. Instead,
[t]he oath represents a solemn promise on the part of each juror to do his duty according to the dictates of the law to see that justice is done. This duty is not just a final duty to render a verdict in accordance with the law, but the duty to act in accordance with the law at all stages of trial. The oath is administered to insure that the jurors pay attention *122 to the evidence, observe the credibility and demeanor of the witnesses and conduct themselves at all times as befits one holding such an important position. [People v Pribble, 72 Mich App 219, 224; 249 NW2d 363 (1976).]
Our review of the record in this case reveals that the error of failing to properly swear the jury did not undermine the proceedings with respect to the broader pursuits and values that the oath seeks to advance.
One of the primary purposes of the oath—to impart to the members of the jury their duties as jurors—was alternatively fulfilled in large part by the trial court’s instructions prescribing the particulars of the jurors’ duties. Immediately before the swearing of the oath, the trial court instructed the jurors, “I will now ask you to stand and swear to perform your duty to try the case justly and to reach a true verdict.” Following the oath, the court instructed the jurors that it was their responsibility to decide the facts of the case solely on the basis of the evidence presented and the law as the court gave it to them, that they should not consider any other information regarding the trial that was not presented in the courtroom, that they should not discuss the case among themselves until deliberations begin, and that they should keep an open mind about the case, setting aside any bias and prejudice. The trial court also explained the concepts of the presumption of innocence and reasonable doubt, instructing the jurors to return a verdict of not guilty unless they unanimously decided that the prosecutor had proved each element of the offenses beyond a reasonable doubt. In addition, before giving the final instructions, the trial court told the jurors, “Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law.” And during the final instructions, the judge reiterated the previously described *123 instructions, including that the jury was to decide the case on the basis of the evidence presented during the trial and the law as the court gave it to them, setting aside all bias and prejudice. These instructions encompassed, in even greater detail, duties equivalent to those prescribed in the oath.
We recognize that the value of the oath as a whole is probably greater than the sum of its individual parts. The juror’s oath involves a conscious promise to adopt a particular mindset—to approach matters fairly and impartially—and its great virtue is the powerful symbolism and sense of duty it imbues the oath-taker with and casts on the proceedings. That virtue, however, was not lost in these proceedings. Each juror took a solemn oath to answer questions truthfully during voir dire, and each stated that he or she could be fair and impartial. In addition, before the start of the trial, the trial court told the jurors, “I will now ask you to stand and swear to perform your duty to try the case justly and to reach a true verdict.” The jurors then stood and the court clerk asked, “You do solemnly swear or affirm that you will true answers make to such questions as may be put to you touching upon your qualifications to serve as jurors in the cause now pending before the Court?” to which the jurors collectively replied, “I do.” Then, as discussed earlier, the trial court thoroughly explained to the jurors their duties and responsibilities. Finally, at the end of trial, the court reminded the jurors, “Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law.” Although this was not a perfect substitute for the oath required by MCR 2.511(H)(1), we have no reason to believe that the jurors in this case as a result of these alternative efforts to *124 inculcate in them a proper sense of their obligations did not understand the dignity and solemnity of the proceedings.[6]
*125 Our review of the record also shows that the trial court was particularly vigilant in attempting to ensure that the jury remained fair and impartial throughout the proceedings. When one of the codefendants decided to plead guilty, the trial court conducted voir dire of each juror to verify that the jurors would not be Influenced by the codefendant’s guilty plea, would retain an open mind, and could continue to be fair and impartial. In this regard, the reasoning of the United States Court of Appeals for the Tenth Circuit for declining to grant relief for a similar error is particularly persuasive:
[A]ny threat to the integrity of the proceedings was mitigated by an otherwise fair and procedurally rigorous trial. The jury was fairly selected and clearly instructed, and the trial was open to the public and administered by an unbiased judge. Turrietta availed himself of his right to counsel and received an unfettered opportunity to put on evidence and make arguments in defense of his innocence.
*126 Moreover, the record supports the government’s contention that the jury understood the thrust of what the oath was designed to impart. The jurors were all sworn to tell the truth during voir dire and were on several occasions reminded by the court of their “sworn duty” to try the case truly and in accordance with the law. The admonition was reinforced over the course of the trial by a steady drumbeat of instructions stressing the importance of rendering a verdict in light of the burden of proof and based solely on the evidence presented. Between the instructions, the oath at voir dire, and the repeated references to the oath at trial, the jurors had plenty to remind them of the importance of their task. If... a juror was still unwilling to decide the case based on the law and evidence, it is doubtful the oath would have made a difference. [Turrietta, 696 F3d at 985.]
The same is true of the instant case. The record indicates that the jurors were conscious of the gravity of the task before them and the manner in which that task was to be carried out; the jurors each stated under oath that they could be fair and impartial, and the trial court thoroughly instructed them on the particulars of their duties. Just as with the constitutional right to a public trial in Vaughn, we require the oath for a reason; however, if the larger purposes served by requiring the oath in the first place are achieved by alternative means, the only reason for reversal would be a preference for an error-free trial, a preference only rarely achieved in the judicial annals. We rejected that concept in Vaughn by declining to grant relief for the defendant’s deprivation of a public trial because the objectives served by that right were otherwise served, albeit imperfectly. In this case, the objectives served by the oath were also achieved by other means, albeit imperfectly. Therefore, we cannot say that the absence of the oath seriously affected the fairness, integrity, or *127 public reputation of the proceedings in this case.[7] Indeed, we believe that “it would be the reversal of a conviction such as this which would” “ ‘seriously affect D the fairness, integrity and public reputation of judicial proceedings’ ” because “ ‘[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.’ ” Johnson, 520 US at 470 (citations omitted; emphasis added).
The error of the Court of Appeals in arriving at the opposite conclusion stems from its failure to conduct a case-specific and fact-intensive inquiry under the fourth Carines prong. See Puckett, 556 US at 142. It does not suffice under this prong to simply state that an error “require [s] a new trial.” In truth, this error stems from the Allan decision, which, after concluding that the failure to swear the jury satisfied the first three Carines prongs, did not take a case-specific approach to the fourth prong. Eather, Allan reasoned:
[T]he trial court’s failure to administer the oath to the jury seriously affected the fairness, integrity, and public reputation of the judicial proceedings. Because the trial court did not administer the oath to the jury, the jury did not undertake the solemn promise to act in accordance with *128 the law at all stages of defendant’s trial. The trial court’s failure to administer the oath to the jury in this case affected the integrity of the proceedings because it resulted in an invalid verdict under Michigan law. The absence of the oath deprived defendant of a means to ensure that the jury would decide the case honestly in accordance with the law and on the basis of the evidence. Administration of the oath was necessary to protect defendant’s fundamental right to a trial by an impartial jury. [Allan, 299 Mich App at 218 (citations omitted).]
The problem with Allan’s analysis is that it could apply to every case in which the jury is improperly sworn. In Allan, and in this case as well, the Court should have engaged in a fact-intensive and case-specific inquiry under the fourth Carines prong to assess whether, in light of any “countervailing factors” on the record, Puckett, 556 US at 143, leaving the error unremedied would constitute a miscarriage of justice, i.e., whether the fairness, integrity, or public reputation of the proceedings was seriously affected.
IV. CONCLUSION
The failure to provide the correct oath was an error, but not one that would result in manifest injustice if left unremedied here. We do nothing to diminish the value of the juror’s oath to say that its absence in this case did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. It is but one component—as important and as symbolic as it may be—in a larger process of fair and impartial adjudication. Because the record before us indicates that defendant was actually ensured a fair and impartial jury, we conclude that his constitutional rights were upheld and reversal is not warranted. We therefore vacate the Court of Appeals’ order and reinstate defendant’s convictions and sentences. We remand this *129 case to the Court of Appeals for consideration of defendant’s remaining claims on appeal. Finally, we caution the trial court in this case, as well as other trial courts in this state, to take particular care that the error that occurred in this case be avoided in the future.
Young, C.J., and Kelly, Zahra, and Bernstein, JJ., concurred with MARKMAN, J.

 Specifically, defendant was charged with two counts of first-degree premeditated murder, MCL 750.316(l)(a), two counts of felony murder, MCL 750.316(l)(b), two counts of torture, MCL 750.85, two counts of unlawful imprisonment, MCL 750.349b, carrying a firearm during the commission of a felony, MCL 750.227b, and being a felon in possession of a firearm, MCL 750.224Í.

 Bracketed “sic” in original.

 The text of the correct oath, which is provided in MCR 2.511(H)(1), is set forth in Part III(C) of this opinion. See also MCL 768.14.

 Whereas the prosecutor concedes that failure to properly swear the jury constituted plain error in that the juror’s oath is plainly mandated under MCR 2.511(H)(1), defendant, as well as the dissent, couch defendant’s claim in the Sixth Amendment right to a jury trial. We need not decide at this time whether the error here was limited to a violation of a court rule, as the prosecutor argues, or was a structural constitutional error, as defendant argues, because it is undisputed that since this is an unpreserved error, defendant must satisfy the plain-error standard of Carines in either event. See Vaughn, 491 Mich at 666-667 (“[E]ven if defendant can show that the error satisfied the first three Carines requirements, we ‘must exercise . . . discretion’ and only grant defendant a new trial if the error ‘resulted in the conviction of an actually innocent defendant’ or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Although denial of the right to a public trial is a structural error, it is still subject to this requirement.”), quoting Carines, 460 Mich at 763 (citation omitted); see also Johnson v United States, 520 US 461, 469; 117 S Ct 1544; 137 L Ed 2d 718 (1997) (“[W]e need not decide [whether the error is structural] because, even assuming that [it is], it does not meet the final requirement of [the plain-error test].”); United States v Turrietta, 696 F3d 972, 976 n 9 (CA 10, 2012) (“Whether an error can be properly characterized as ‘structural’ has nothing to do with plain error review . . . .”). Quoting Carines, 460 Mich at 774, defendant himself acknowledged in his brief in this Court that “it is ultimately unnecessary for this Court to parse the meaning of the words structural or non-structural, because for both types of error a Defendant must show that there was plain error . . . and ‘. . . the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.’ ” (Emphasis omitted.) This approach is consistent with the well-established principle that “we will not reach constitutional issues that are not necessary to resolve a case.” IBM v Dep’t of Treasury, 496 Mich 642, 662 n 67; 852 NW2d 865 (2014) (opinion by VIVIANO, J.) (quotation marks and citation omitted).
*118 Although we need not reach the issue of whether the error here was a structural constitutional error, we would be remiss in light of the dissent’s analysis not to point out the following:
(a) The United States Supreme Court has “found an error to be ‘structural’.. . only in a very ‘limited class of cases’ ”—complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and defective reasonable-doubt instructions. Neder v United States, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999) (citations omitted).
(b) “No federal court in the history of American jurisprudence has held the constitutional guarantee of trial by jury to necessarily include trial by sworn jury.” Turrietta, 696 F3d at 982.
(c) This Court has held that even actual juror misconduct, such as lying about one’s qualifications to serve as a juror, is not structural constitutional error, People v Miller, 482 Mich 540, 556; 759 NW2d 850 (2008), and at least one court has held that there is “no reason to treat a failure to administer the oath to the jury as more fundamental in nature—and thus ‘structural’—than the jurors’ actual performance of their duties in conformance with that oath, or the jurors’ eligibility or competence to be jurors,” State v Vogh, 179 Or App 585, 596; 41 P3d 585 (2002) (emphasis added).
(d) The dissent’s repeatedly expressed characterization of the oath as being literally “indispensable” is incompatible with its own recognition that a defendant deprived of this right is not entitled to relief unless the plain-error test is satisfied.
(e) The dissent’s theory that “the structural nature of the error presumptively establishes the fourth prong” is inconsistent with this Court’s recent holding in Vaughn, 491 Mich at 654, 667, that even with regards to a structural error, “a defendant is not entitled to relief unless he can establish ... that the error . .. seriously affected the fairness, integrity, or public reputation of judicial proceedings” and that “[w]hile ‘any error that is “structural” is likely to have an effect on the fairness, integrity or public reputation of judicial proceedings,’ the plain-error analysis requires us to ‘consider whether an error “seriously” affected those factors.’ ” Quoting Barrows v United States, 15 A3d 673, 679-680 (DC, 2011).

 That is emphatically not to say that we viewed the Sixth Amendment right to a public trial as “meaningless” in Vaughn, just as we are in no way suggesting in the present case, contrary to the dissent’s contention, that the right to a properly sworn jury is a “meaningless” right that can be “easily . . . dispensed with.” Each is a critical right that serves a critical function within our criminal justice system. However, not every violation of every such right must result in an automatic reversal of a defendant’s conviction. See People v Beach, 429 Mich 450, 491; 418 NW2d 861 (1988) (“We require a fair trial, not a perfect trial.”); People v France, 436 Mich 138, 142, 161; 461 NW2d 621 (1990) (noting that this Court abolished the “strict rule requiring reversal of a conviction in the event of communication with a deliberating jury outside the courtroom and the presence of counsel” because the “rule of automatic reversal does not serve the best interests of justice and, in many instances, it may very well serve to defeat justice”). Contrary to the dissent’s contention, we give considerable “meaning” to the oath by requiring that it be given, by recognizing that if it is not given a material error has occurred, and by assessing the need to reverse because of the error by comparing the purposes served by the oath with the alternative means by which those purposes have been furthered. We further give “meaning” to the oath by our recognition that alternative means of furthering the purposes of the oath are imperfect alternatives that require careful judicial review and analysis. That is, we give “meaning” to the oath by recognizing that it constitutes the ideal and by comparing any alternative means of conduct with that ideal.

 Although the oath that was administered in this case at the beginning of the trial was obviously an incorrect oath, it is noteworthy that MCR 2.511(H)(1) states:
The jury must be sworn by the clerk substantially as follows:
“Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God.” [Emphasis added.]
In addition, MCL 768.14 states:
The following oath shall be administered to the jurors for the trial of all criminal cases: “You shall well and truly try, and true deliverance make, between the people of this state and the prisoner at bar, whom you shall have in charge, according to the evidence and the laws of this state; so help you God.”
Although we are in no way suggesting that the oath that was administered here was even “substantially’ the oath required by MCR 2.511(H)(1) or the oath required by MCL 768.14, we would nevertheless be remiss not to note that the precise language of the oath set forth in MCR 2.511(H)(1) is not necessarily required. The dissent is correct that “[f]or as long as the institution we know as ‘trial by jury’ has existed, juries have been sworn.” See 5 Kurland & Lerner, The Founders’ Constitution (Chicago: University of Chicago Press, 1987), p 256 (“ “When the trial is called on, the jurors are to be sworn . .. .’ ”), quoting 4 Blackstone, Commentaries on the Laws of England, p *352; 1 Few, In Defense of Trial by Jury (American Jury Trial Foundation, 1993), p 25 (“The preamble to a statute in the 15th year of the reign of Henry VI recites that ‘the trial of the life and death, lands and tenements, goods and chattels of every one of his subjects . . . touching matters of fact. .. is to be .. . made by the oaths ... of 12 men duly summoned in his courts.”) (citation omitted); id. at 102 (“[TJhe first ordinance adopted by the Plymouth Colony in 1623 was one declaring, among other things, that ‘all criminal facts’ should be tried ‘by the verdict of twelve honest men to be empaneled by authority, in the form of a jury upon their oaths.’ ”) (citation omitted); id. at 169 (stating that in 1774, the First *125 Continental Congress adopted a resolution that stated “neither life, liberty nor property can be taken from the possessor, until twelve of his .. . countrymen .. . shall pass their sentence upon oath against him”). However, the dissent overlooks that the precise language of the oath used to swear the jury has never been a “fixed constant,” as is evidenced by the fact that our own court rule, MCR 2.511(H)(1), and statute, MCL 768.14, contain differently worded oaths. Relatedly, we believe that the dissent incorrectly characterizes this case as a “failure to swear the jury” case or a case in which the “defendant [was] tried by an unsworn jury.” Although the court clerk indisputably read the wrong oath to the jury, the jury was nevertheless sworn. They rose and solemnly swore to be truthful. Although the court rule and statute clearly required the jury to swear to something more than simply being truthful, we nevertheless believe that the dissent errs by giving no weight whatsoever to the imperfect oath-swearing process that did occur here. Although once again we acknowledge the substantial imperfections of the process, there was a very real oath-swearing that occurred, real in terms of both its substance and the dignity and solemnity of the process.

 As observed earlier, the dissent’s contention that “the structural nature of the error presumptively establishes the fourth prong, shifting the burden to the prosecution to show that, in fact, the fairness, integrity, and public reputation of the proceeding were not seriously affected,” is inconsistent with this Court’s recent holding in Vaughn, 491 Mich at 654, that even with regards to a structural error “a defendant is not entitled to relief unless he can establish.. . that the error. .. seriously affected the fairness, integrity, or public reputation of judicial proceedings.” Moreover, even under the dissent’s “shifted burden” or “rebuttable presumption” approach, we believe that the prosecutor has shown that the fairness, integrity, and public reputation of the proceedings were not seriously affected and therefore that defendant is not entitled to relief.