# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ERIC RURAL HANNA,

       Defendant-Appellant.

UNPUBLISHED
November 19, 2015

No. 320268
Chippewa Circuit Court
LC No. 13-001140-FC

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions in the Chippewa Circuit Court of five counts of assault with a dangerous weapon (felonious assault), MCL 750.82, three counts of assault with intent to commit great bodily harm less than murder ("AGBH"), MCL 750.84, and one count of first-degree criminal sexual conduct ("CSC I"), MCL 750.520b (multiple variables). The trial court sentenced defendant as a third habitual offender, MCL 769.11, to 25 to 96 months' imprisonment for the assault with a dangerous weapon convictions, 34 to 240 months' imprisonment for the AGBH convictions, and 200 to 720 months' imprisonment for the CSC I conviction, with all sentences to run concurrently. We affirm.

## I. FACTUAL BACKGROUND

This case arises from numerous instances of domestic abuse perpetrated by defendant against his wife. Defendant and the victim met in 2002 and lived together following their marriage in April 2010. The victim testified that defendant was verbally and physically abusive both before and during their marriage. At trial, the victim described numerous instances of abuse in addition to those giving rise to defendant's convictions. Other witnesses corroborated many of the instances of abuse described by the victim.

In July 2006, following a verbal altercation regarding the manner in which defendant disciplined the victim's grandson, defendant "chopped [the victim's] finger off" by slamming a door shut while he was aware that the victim had placed her hand on the doorframe. Defendant then opened the door and handed the disconnected finger to the victim. The victim's friend was present when this incident occurred and drove the victim to the hospital.

In August 2010, the victim picked up defendant from a bar at approximately 1:00 a.m., explaining to defendant that she would not let him drive because he was drunk and did not have a

driver's license.  When they arrived home, defendant "grabbed [the victim] by the throat and hit [her] like [she] was a man.  And he smashed all [of her] face and he pushed [her] aside and he took off."  The victim testified that she asked defendant why he did that to her the following morning while he was in the bathroom.  In response, defendant "peed up and down [her] leg like a garden hose."

During the next episode of abuse, defendant threw a glass coaster at the victim's head, "slic[ing] the top of [her] head open" so that blood gushed out.  The victim went to the home of defendant's friend for help, and defendant arrived at the friend's house, "dragged [the victim] out of there[,] and  . . . brought [her] home."

The next incident occurred when defendant returned home and found the victim babysitting a young child.  The victim and defendant started arguing because defendant was upset that the victim had not asked him if she could babysit the child.  Defendant ultimately smashed a bottle of raspberry vodka on the side of the victim's head.  Red vodka spilled on the carpet, and blood poured out of the victim's head.  The victim called the child's mother, who picked up her son and the victim and drove them back to her own apartment.  The victim stayed at the mother's apartment that night, and the mother tended to the victim's injury.

In September 2011, defendant was upset because he was not going on a camping trip with the victim and members of the victim's family.  After threatening to kill the victim and cut her body into "bits and pieces," defendant threw a can of beer at her.  The beer missed the victim and shattered a picture, causing glass to fall on her.  The victim exited the house and drove away with her daughter and grandchildren.

In November 2011, defendant kicked the victim in the stomach, and she fell into a pole.  In January 2012, defendant pushed the victim, threatened to kill her, and elbowed her in the eye because she used too much water as she washed the dishes.

In the summer of 2012, tension arose between the victim and defendant.  After a series of events, the victim returned to their trailer at a campground.  Defendant arrived at the trailer and began to pack up some of their supplies, intending to leave the victim at the trailer while he returned home.  When the victim pleaded with defendant to leave some of the camping supplies at the trailer, defendant suddenly "grabbed a knife and . . .  slammed [her] on [her] granddaughter's bed," holding the knife to the victim's neck and repeatedly telling her "to shut up, shut up, shut up."  After defendant let the victim go, she told him that she hoped that he would never do that again.  Defendant then grabbed the knife and held it to her neck a second time, again telling her to "shut up."  Defendant then called a taxi and left with the supplies.

A week or two later, the victim was camping with her granddaughters at the trailer.  At approximately 3:00 a.m., defendant cut a screen in order to unlock the trailer door.  Once inside, defendant "pushed [the victim] up against the trailer" and tried to burn her face with his cigarette.  When one of her granddaughters "yell[ed,] ['G]randpa, not her face, don't hurt grandma's face[,' ]" defendant grabbed the victim, threw her on the bed, and exited the trailer.

In January 2013, defendant grabbed the victim's face and neck, leaving her "esophagus . . . so swollen that [she] whispered for four days afterwards."  During this incident, defendant also

knocked a filling out of the victim's mouth. Later, defendant used his body to push the victim into the sink during a dispute over money, threatening to kill her. Defendant also threw a metal object from a sewing machine at the victim, which cut her hand and damaged a bone.

In February 2013, during a dispute regarding the volume of the stereo, the victim grabbed a wire out of a speaker. Defendant took the wire and wrapped it around the victim's neck. He then picked up a small hammer, and it appeared that he was going to hit the victim's head with it. At trial, the victim testified that she was choking and "truly, truly believed that this was the time that he was going to definitely kill [her]." The victim said to defendant, "[D]o it, just do it. I don't care. I would rather be dead than be married to you. I can't take it no more." Defendant then threw the hammer on the couch, told the victim that she was not worth it, and pulled the cord off her neck.

In April 2013, defendant and the victim got into a heated discussion related to defendant's former job. Defendant dived at the victim, grabbed her hair, and threw her into a wall. Two days later, while the victim was in a separate apartment inside of their home, defendant knocked on her door and stated that he had a letter for her. When the victim opened the door slightly, defendant pushed the door completely open. As the victim began to run away from defendant, he chased her. Defendant then grabbed her from behind, and the victim pushed the letter underneath her pajamas, yelling, "[D]on't[,] Eric, don't do this." Next, defendant put his hands down the victim's pajama pants and "started digging at the inside of [her] leg." The victim then grabbed the phone that was on a desk nearby and dialed 911. Defendant then "dug [into] [her] clitoris." At trial, when the victim was asked why she called the police during the last incident when she had never done so previously, she replied, "Because I was tired of being hurt. I was tired. I wanted to live and I knew that if I didn't stop him sooner or later I wasn't gonna live."

## II. INADMISSIBLE TESTIMONY

On appeal, defendant first argues that he is entitled to a new trial because the trial court allowed a police detective to provide inadmissible testimony, and because defense counsel provided ineffective assistance when she failed to object to that testimony. We will address each argument in turn.

## A. STANDARDS OF REVIEW

Defendant's arguments regarding the detective's testimony are unpreserved because defendant failed to object to each of the evidentiary errors asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."), citing MRE 103(a)(1). We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To demonstrate such an error, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error

resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted; second alteration in original).

Our review of defendant's ineffective assistance of counsel claims is limited to mistakes apparent on the record because he did not move for a new trial or *Ginther*[1] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In order to prove that counsel provided ineffective assistance, a defendant must demonstrate that (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) the defendant was prejudiced, i.e., "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012) (quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984)). "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed," and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Likewise, a defendant "must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id.* at 411.

## B. TESTIMONY REGARDING THE VICTIM'S PRIOR CONSISTENT STATEMENTS

First, defendant argues that the detective impermissibly testified that the victim made prior consistent statements. We disagree.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Hearsay is not admissible, except as provided by the rules of evidence. MRE 802.

With regard to prior consistent statements, MRE 801(d) provides, in relevant part:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) Prior statement of witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

In *People v Jones*, 240 Mich App 704, 706-707; 613 NW2d 411 (2000), this Court held that the party offering a prior consistent statement must establish four elements:

(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [Quotation marks and citation omitted.]

On appeal, defendant only contests the second element, claiming that the detective's testimony about the victim's prior consistent statements was not admissible under MRE 801(d)(1)(B) because "the allegation was that [the victim] had made the allegations up from the beginning," not recently. Defendant provides no citation to the record confirming that the charge was, in fact, that the victim had fabricated her statements from the start. A "[d]efendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation marks and citation omitted). Instead, our review of the record reveals that defense counsel explicitly questioned both the victim and two police officers regarding the fact that the victim did not initially disclose the sexual abuse to the police after the incident, which raised, by implication, a charge of recent fabrication. Thus, we reject defendant's claim of error under MRE 801(d)(1)(B).

## C. TESTIMONY REGARDING VICTIMS OF SEXUAL ASSAULT

Second, defendant argues that the detective impermissibly testified that, in his experience, it was rare for victims to immediately disclose the details of a sexual assault to a police officer. We disagree.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007); see also *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Consistent with this rule, it is not permissible for experts to vouch for the veracity of a victim. *Dobek*, 274 Mich App at 71. However, an individual's comments regarding a witness's "responses and demeanor" do not constitute "an expression of personal belief in the witness's credibility." *People v Stout*, 116 Mich App 726, 730; 323 NW2d 532 (1982). Moreover, a police officer is generally permitted to provide lay opinion testimony concerning matters within his or her personal knowledge and experience. *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod 433 Mich 862 (1989).

On appeal, defendant claims that the detective impermissibly vouched for the victim's credibility when he testified that "it's pretty rare" for sexual assault victims to immediately disclose the details of a sexual assault, and that it is not uncommon for a female sexual assault victim to withhold some of the details of a sexual assault from a male police officer. We conclude that this testimony did not constitute an opinion regarding the victim's veracity or

credibility. Instead, the statements comprised the detective's lay opinion in light of his experience with sexual assault victims, which is permissible under MRE 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). See also *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003); *People v Hanna*, 223 Mich App 466, 475; 567 NW2d 12 (1997), citing MRE 701. It is apparent that the detective was providing an opinion or inference rationally related to his own experiences with female sexual assault victims, and this opinion or inference was helpful to a clear understanding of the evidence of sexual assault in this case.[2] Thus, defendant has failed to establish a plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

### D. TESTIMONY REGARDING CORROBORATION BY OTHER WITNESSES

Third, defendant argues that the detective impermissibly testified that other witnesses corroborated the victim's testimony. We disagree.

In particular, defendant appears to challenge the following exchange between the prosecutor and the detective:

> *Q*. With respect to the photographs and what's been depicted as far as their dates, [the victim] told you when those photographs were taken, correct?
>
> *A*. Correct.
>
> *Q*. And you also spoke with several other witnesses who took those photographs and told you when they took those photographs?
>
> *A*. Correct.
>
> *Q*. So you do know or have knowledge about that from the witnesses?
>
> *A*. The witnesses that corroborated the story [of] the victim as depicted in those photos as a part of the time [sic], there have been, during my investigation when I spoke with the witnesses, a lot of the, a lot of the information I got

---

[2] We conclude that the detective's testimony constituted lay opinion because he was not offering a technical or scientific analysis of the reporting patterns of sexual assault victims. See *Petri*, 279 Mich App at 416. However, even if the detective's testimony arguably constituted "scientific, technical, or other specialized knowledge," such that the trial court should have first determined whether the detective was qualified to testify as an expert, MRE 702, there is no plain error. A police officer may be qualified as an expert witness based on his or her experience or training in sexual abuse cases, *Petri*, 279 Mich App at 416-417, and the record shows that the detective would have qualified given his years of service as a police officer and experience with interviewing countless sexual assault victims.

matched up very, very close within days, or, you know, the best as everybody could remember on exact dates, two to three years ago, the ball team and everything else.

> *Q.* So when you speak with all the witnesses who've seen different injuries and then look at the photographs, everything matched what the victim stated to you?
>
> *A.* Correct.

In context, it is evident that the challenged testimony was elicited in response to defense counsel's cross-examination of the detective, during which she sought to undermine the credibility of the physical evidence in this case by emphasizing (1) the fact that several objects were not tested for blood, skin cells, or DNA, (2) the fact that it was not apparent that the objects supplied by the victim as evidence were necessarily the objects that defendant utilized to perpetrate the assaults, and (3) the possibility that the photographs provided by the victim were not taken immediately following the assaults. Notably, defense counsel's last question during her cross-examination of the detective was the following: "So we really don't have any way to say that the photos that [the victim] gave [you] were taken on the night she say's [sic] really?"

As such, the record shows that defendant opened the door to the challenged testimony, as it was offered to demonstrate that the detective had reason to believe that the pictures that he received from the victim were taken when the victim said they were taken. Thus, the admission of this testimony did not constitute a plain error affecting substantial rights. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("While a witness cannot properly comment on the credibility of another witness, defendant opened the door to the question when he attempted to undermine his companion's credibility by pointing out that his statements to police were not consistent." [Citations omitted.]); *People v Lipps*, 167 Mich App 99, 108; 421 NW2d 586 (1988). Cf. *People v Benton*, 294 Mich App 191, 201; 817 NW2d 599 (2011). Furthermore, the detective's statements did not indicate the detective's personal opinion regarding the victim's veracity, or vouch for her credibility; instead, he merely indicated that the information provided by the witnesses during his investigation was consistent with the victim's accounts. See *Dobek*, 274 Mich App at 71; *Buckey*, 424 Mich at 17.

However, even if we assume that this testimony was inadmissible, defendant has failed to establish that he was prejudiced by its admission. The jury had an opportunity to hear both the victim's and the other witnesses' testimony. Consistent with the detective's statements, it is obvious that the other witnesses' corroborative testimony at trial "matched" the victim's testimony. To the extent that defendant suggests that the detective's statements were given undue weight by the jury in light of his status as a police officer, the jury was specifically instructed that they were to "decide what the facts of this case are," and that the police officers' testimony was "to be judged by the same standards you use to evaluate the testimony of any other witnesses." "Jurors are presumed to follow their instructions . . . ." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Thus, there is no indication that the detective's statement affected the outcome of the proceedings. *Carines*, 460 Mich at 763-764.

E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel provided ineffective assistance by failing to object to the detective's testimony. We disagree.

As explained *supra*, defendant has failed to establish any error with regard to the detective's testimony regarding the victim's prior consistent statements and his experience with sexual assault victims. Accordingly, defense counsel did not provide ineffective assistance when she failed to object to this testimony, as failing to raise meritless or futile objections does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. Moreover, even if we assume that the detective's testimony regarding the other witnesses' corroboration of the victim's testimony was erroneous, defendant has failed to establish the requisite prejudice, as discussed above. *Vaughn*, 491 Mich at 669-671.

### III. LACK OF DETAIL IN FELONY INFORMATION, JURY INSTRUCTIONS, AND VERDICT FORMS

Next, defendant argues that his AGBH convictions should be vacated because the felony information, jury instructions, and verdict forms were too generic. We disagree.

### A. STANDARD OF REVIEW

Because defendant expressly approved the jury instructions provided by the trial court, he has waived any claim of error related to the instructions. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011); see also *People v Gaines*, 306 Mich App 289, 310-311; 856 NW2d 222 (2014). Accordingly, we will not review his arguments related to the jury instructions. Defendant failed to raise his claims related to the felony information and verdict forms in the trial court and, therefore, failed to preserve those arguments for appeal. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Thus, we will review those claims for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

### B. ANALYSIS

The gravamen of defendant's argument is that the ambiguous nature of the felony information and verdict forms precluded the jury from finding that the prosecution established defendant's guilt beyond a reasonable doubt, because (1) the language was insufficient to support three separate charges of AGBH, and (2) the record does not indicate the particular acts identified by the jury as constituting three counts of AGBH. Accordingly, defendant's claim of error related to the felony information and verdict forms is limited to the validity of the jury's verdict—finding defendant guilty of three counts of AGBH—based on those documents. Even if we assume that the felony information and verdict forms were not specific enough in this case, defendant has failed to establish that reversal is warranted.

Defendant asserts that "it cannot be said that the [prosecution has] met [its] constitutional burden to establish guilt beyond a reasonable doubt because the record does not establish what acts the jury found constituted AGBH, let alone three counts of AGBH." Contrary to defendant's claim, it is apparent that both parties established the acts that the jury needed to find beyond a reasonable doubt in order to convict defendant of each count of AGBH, even though those facts are not specifically described in the felony information or verdict forms.

The felony information states that all of the acts on which defendant's charges were based occurred between July 2006 and April 8, 2013 in Chippewa County.[3] In her closing argument, the prosecutor expressly described the three acts that gave rise to the AGBH charges:

> The defendant again is charged with three counts of assault with intent to do great bodily harm less than murder. And here are the elements. First that the defendant tried to physically injure [the victim]. Second at the time the defendant had the ability, thought he had the ability or, [sic] had the ability or thought he had the ability. And third that the defendant intended to cause great bodily harm.
>
> Actual injury is not necessary. But you can consider it, injury, in determining whether there was intent. Great bodily harm means physical injury that could serious [sic] harm the health or function of the body.
>
> Consider these events. A time in August of 2010 when the defendant grabs the victim by the throat and punched her in the head so hard that it shattered her teeth. And left her looking like she does in those pictures. From the top of her eye down to her neck. The time that the defendant took a stereo cord and wrapped it around her throat so that she could not breathe. Intent. The time that the defendant held her and tried to take a lit cigarette to her face and threw her down so hard he dislocated her pelvic [sic].

The prosecutor also reiterated during her closing argument that the jury needed to conclude that defendant was guilty beyond a reasonable doubt in order to return a guilty verdict.

Similarly, during her closing argument, defense counsel expressly addressed each of the counts in the order that they appear on the felony information and responded to the prosecutor's arguments, thereby delineating the facts that the jury needed to find beyond a reasonable doubt for each AGBH count.[4] Thus, even though the incidents giving rise to each AGBH count were not specifically described in writing on the felony information and the verdict forms, it is clear that the jury was apprised, by both the prosecution and the defense, of the facts that it needed to find beyond a reasonable doubt with regard to each of the three counts of AGBH. Moreover, the trial court expressly instructed the jury, and defense counsel reminded the jury, that the prosecutor needed to prove beyond a reasonable doubt every element of each charge in order to convict defendant. Again, "[j]urors are presumed to follow their instructions . . . ." *Mahone*, 294 Mich App at 212. Accordingly, in viewing the record as a whole, defendant's claim, i.e., that the

---

[3] Although the felony information states that all of the acts occurred between July 2006 and April 8, 2013, the jury was instructed to consider defendant's acts between August 2010 and April 8, 2013.

[4] For example, defense counsel expressly stated that "[c]ount six is when [defendant] took the cigarette to her face in the camper" and "push[ed] her over backwards, so hard that she can barely walk the next day," and explicitly argued that defendant is "not guilty of great bodily harm on this count."

record does not identify the acts found by the jury to comprise three counts of AGBH, has no merit.

Furthermore, to the extent that defendant frames this claim as "an insufficient evidence issue," our review of the record confirms that the victim's testimony, which was extensively corroborated by other witnesses' testimony, which was more than sufficient to prove defendant's guilt beyond a reasonable doubt for three counts of AGBH. See *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) ("The elements of [assault with intent to do great bodily harm] are (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." [Quotation marks and citation omitted.]).

Therefore, given that each count of AGBH was specifically described to the jury by both the prosecution and the defense, defendant has failed to establish a plain error that affected his substantial rights based on the "generic language" of the felony information and the verdict forms, as there is no indication that the unspecific nature of the documents affected the outcome of the trial. *Carines*, 460 Mich at 763. Likewise, even if the language was insufficient, reversal is unwarranted, as the evidence adduced precludes a finding that the generic nature of the felony information and the verdict forms resulted in the conviction of an actually innocent defendant, and there is no indication that the language affected the fairness, integrity, or public reputation of the proceedings in light of the attorneys' statements and the trial court's instructions. *Id*. at 763-764.

## IV. STANDARD 4 BRIEF

Defendant raises three additional issues in a brief filed *in propria persona* pursuant to Administrative Order 2004-6, Standard 4. We will address each argument in turn.

## A. SUBSTITUTE COUNSEL

First, defendant argues that he is entitled to a new trial because the trial court failed to make a thorough inquiry in response to his request for substitute court-appointed counsel. We disagree.

## 1. STANDARD OF REVIEW AND APPLICABLE LAW

In general, we review a trial court's decision regarding the substitution of counsel for an abuse of discretion, which occurs when the trial court's decision "falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted); *People v Echavarria*, 233 Mich App 356, 368-369; 592 NW2d 737 (1999). However, because defendant failed to request the substitution of counsel in the circuit court, we review the trial court's decision regarding for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

All criminal defendants enjoy the right to the assistance of counsel under the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20. However, this right is not unlimited, especially concerning the substitution of counsel:

An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Strickland*, 293 Mich App at 397 (internal quotation marks and citations omitted).]

"When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *Id*. (quotation marks and citation omitted). It is the defendant's responsibility to request a hearing to determine whether his attorney should be replaced. *People v Ceteways*, 156 Mich App 108, 118; 401 NW2d 327 (1986). " 'A judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require a conviction following such error be set aside.' " *Id*., quoting *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). Instead, the proper remedy on appeal for a trial court's refusal to grant a hearing is to order such a hearing. *Id*., quoting *Ginther*, 390 Mich at 444-443.

## 2. ANALYSIS

Contrary to defendant's characterization of the record, defendant never moved for, or requested, substitute counsel in the trial court. Defendant simply alerted the court that he had filed a motion for substitute counsel in the district court, which the district court denied. Although defendant's statements in the circuit court may have been intended to express some dissatisfaction with his counsel, he never asserted that a conflict had developed with his attorney; never claimed that his counsel was inadequate, disinterested, or not diligent; never requested a hearing on whether defense counsel should be replaced; and never otherwise claimed that good cause existed for the substitution of counsel. The circuit court judge specifically advised defendant that he may file a motion, either drafted by himself or defense counsel, for the substitution of counsel, and that the trial court would "hear [the motion] on its merits when it's properly filed." However, defendant never took advantage of that opportunity.[5]

Thus, because defendant never moved for substitute counsel in the trial court, the trial court's failure to further inquire into whether a substitution of counsel was warranted did not constitute a plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

## B. JUROR OATH

---

[5] In his Standard 4 brief, defendant only identifies his discussion on the record with the trial court at his arraignment as "prima facie proof" that the trial court "failed to make the mandatory inquiry into [defendant's] request for substitution of court-appointed counsel." He does not assert that he filed a motion for substitute counsel, as the trial court instructed.

Next, defendant argues that he is entitled to a new trial because the trial court failed to administer an oath to the prospective jurors prior to the jury selection process pursuant to MCR 6.412(B). We disagree.

## 1. STANDARD OF REVIEW

Defendant failed to preserve this issue by raising it in the trial court. *Metamora Water Serv, Inc*, 276 Mich App at 382. Defendant appears to suggest, based on *People v Allan*, 299 Mich App 205, 216; 829 NW2d 319 (2013),[6] abrogated by *People v Cain*, 498 Mich 108; 869 NW2d 829 (2015), that the trial court's failure to administer the oath constitutes a structural error that requires automatic reversal without a showing of prejudice. However, the Michigan Supreme Court has held that an unpreserved claim is reviewed for plain error affecting substantial rights under the four-prong test articulated in *Carines*, regardless of whether the error is a violation of a court rule or a structural constitutional error. *Cain*, 498 Mich at 117 n 4, citing *People v Vaughn*, 491 Mich 642, 666-667; 821 NW2d 288 (2012). See also *Vaughn*, 491 Mich at 655 n 42. Thus, we conclude that defendant's unpreserved claim is reviewed for plain error affecting substantial rights. *Id*. at 114-118.

## 2. ANALYSIS

Pursuant to MCR 6.412, "[b]efore beginning the jury selection process, the court should give the prospective jurors appropriate preliminary instructions and must have them sworn." As defendant asserts, there is no indication in the record that the prospective jurors were sworn as required by MCR 6.412(B), which constitutes a plain error. However, the trial court properly administered the oath required by MCR 2.511(H)(1) after the jury was selected and before the trial began. The trial court also reminded the jury during its closing jury instructions that the jurors took "an oath to return a true and just verdict based only on the evidence and my instructions on the law," not "sympathy or prejudice." Additionally, the trial transcript also indicates that the jury was sworn again immediately before it began its deliberations, although the oath itself is not described in the record. Defendant does not argue, and there is nothing in the record to suggest, that any prospective jurors concealed information during the voir dire process, or were untruthful or biased. Thus, under these circumstances, defendant has failed to

---

[6] *Allan*, 299 Mich App at 216, addressed a trial court's failure to administer an oath to the jury *after* voir dire but prior to trial. That case was recently abrogated by the Michigan Supreme Court in *People v Cain*, 498 Mich 108; 869 NW2d 829 (2015). In *Cain*, the Court rejected the bright-line rule that a failure to properly swear a jury constituted an error that required reversal, even in the absence of an objection, and instead applied the four-prong *Carines* test. *Id*. at 112-113, 121-128. Based on its review of the record, the Court upheld the defendant's convictions under the plain error standard on the basis that the trial court actually ensured throughout the proceedings that the defendant's case was heard by a fair and impartial jury. *Id*. at 128-129. Accordingly, even if we disregard the factual differences between *Allan* and this case, *Allan* is not dispositive here.

establish that the trial court's failure to administer the oath required under MCR 6.412(B) constituted a plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

Likewise, we reject defendant's claim of ineffective assistance based on defense counsel's failure to object to the trial court's failure to administer the oath. For the same reasons, defendant has failed to demonstrate prejudice as a result of defense counsel's error. *Vaughn*, 491 Mich at 669-671.[7]

## C. PROSPECTIVE JUROR QUESTIONNAIRES

Lastly, defendant argues that he is entitled to a new trial because defense counsel provided ineffective assistance when she refused to allow defendant to review the prospective jurors' personal history questionnaires. See MCR 2.510(B)(1), (C)(1)(c). We disagree.

### 1. STANDARD OF REVIEW

Again, our review of defendant's claims is limited to mistakes apparent on the record because he did not move for a new trial or a *Ginther* hearing. *Petri*, 279 Mich App at 410.

### 2. ANALYSIS

The record includes no indication that defense counsel rejected defendant's request to review the juror questionnaires. Because defendant has failed to establish the factual predicate of his argument, his claim of ineffective assistance necessarily fails. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Further, even if we assume, arguendo, that defense counsel did, in fact, deny defendant's request, and that this denial fell below an objective standard of reasonableness, the record does not support defendant's claim of prejudice, i.e., that the defense's decisions regarding for cause and peremptory challenges were not intelligently made. *Vaughn*, 491 Mich 642, 669-671. Instead, the record clearly indicates that the peremptory and for cause challenges raised by the defense were intelligently made based on the juror questionnaires. Defense counsel specifically stated on the record that the questions that she asked during the jury selection process were based on the jurors' questionnaires, she expressly referenced jurors' questionnaires at least twice during voir dire, and she asked other questions that clearly originated from the questionnaires. She also exercised numerous for cause and peremptory challenges. Defendant does not identify any prejudice arising from the composition of the jury.

---

[7] Defendant also requests a *Ginther* hearing concerning this issue in his Standard 4 brief. Defendant failed to properly file a motion to remand in this Court for such a hearing pursuant to MCR 7.211(C)(1). Although this Court has the authority under MCR 7.216(A)(5) and (7) to remand for an evidentiary hearing even in the absence of a motion to remand, holding a *Ginther* hearing to determine defense counsel's trial strategy would have no effect on the outcome of this issue given our finding that defendant has failed to establish the requisite prejudice. Thus, remand is not necessary.

Accordingly, because the only evidence in the record indicates that defense counsel's challenges were intelligently made, there is no indication that the outcome of the proceedings would have been different if defendant had reviewed the questionnaires himself. *Id*.

## V. CONCLUSION

Defendant has failed to establish a plain error affecting substantial rights as to any of the claims of error identified on appeal. Likewise, he has failed to demonstrate that defense counsel provided ineffective assistance. Thus, we affirm defendant's convictions and sentences.

Affirmed.


/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan