# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

TYRONE HOWELL,

    Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 331901
Wayne Circuit Court
LC No. 15-007231-01-FC

Before: TALBOT, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant, Tyrone Howell, appeals as of right his bench trial convictions of discharge of a weapon at a building,[1] felonious assault,[2] carrying a firearm during the commission of a felony (felony-firearm),[3] being a felon in possession of a firearm,[4] being a felon in possession of ammunition,[5] and malicious destruction of property.[6] The trial court sentenced defendant as a second habitual offender,[7] to 3½ to 10 years' imprisonment for the discharge of a firearm at a building conviction, a consecutive term of two years' imprisonment for the felony-firearm conviction, and 18 months' probation for the remaining convictions. We affirm.

On July 27, 2015, defendant was walking by his cousin, Robert Jenkins's, home in Detroit when defendant's brother, Demetrius Howell, called him over. Defendant was not welcome at Jenkins's home due to past differences the two had. Nevertheless, defendant approached Jenkins' home and the two soon began quarreling. Jenkins told defendant to leave

---

[1] MCL 750.234b(1).

[2] MCL 750.82.

[3] MCL 750.227b.

[4] MCL 750.224f(1).

[5] MCL 750.224f(3).

[6] MCL 750.377a(1)(c)(*i*).

[7] MCL 769.10.

-1-

and defendant left, stating that he would be back to "spray" the home up, which Jenkins interpreted as meaning defendant would shoot at the house. Approximately ten minutes later, Jenkins heard a barrage of gunfire. He was thrown to safety by one of the guests present at his home, but when he looked up, Jenkins saw defendant standing on the sidewalk in front of his house holding what appeared to be an AK-47 assault weapon with a banana clip. Defendant turned and ran. Defendant was convicted and sentenced as noted above and this appeal followed.

Defendant first argues that he is entitled to resentencing because there is no written proof of service for the habitual offender notice in the court file as required by MCL 769.13(2). We disagree.

Defendant did not raise this issue before the trial court. We thus review this unpreserved claim under the four-prong "plain error" standard.[8] The first three prongs require establishing that "(1) an error occurred, (2) the error was 'plain'—i.e., clear or obvious, and (3) the error affected substantial rights—i.e., the outcome of the lower court proceedings was affected."[9] If the first three elements are satisfied, the appellate court must then exercise its discretion in deciding whether to reverse, and "relief is warranted only when the court determines that the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings."[10]

MCL 769.13 addresses a notice of intent to seek an enhanced sentence and provides, in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service

---

[8] *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

[9] *Id.*, citing *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999).

[10] *Cain*, 498 Mich at 116 (quotation marks and citation omitted).

of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.[11]

A habitual second notice appears on defendant's August 2, 2015 felony warrant and felony information in this matter. He was arraigned on the information on August 15, 2015. There is no proof of service of the habitual offender notice found in the lower court file. Thus, defendant is correct that the prosecution failed to strictly comply with the statute. This was error on the prosecution's part. Nevertheless, defendant is not entitled to relief.

At his initial sentencing, defendant's status as a habitual offender was mentioned by the prosecutor and agreed to by defense counsel. Defendant later moved for resentencing based on his assertion that he was erroneously sentenced as a third habitual offender when he should have been sentenced as a second habitual offender. Defendant thus indicated his acknowledgment and, indeed, his affirmative acceptance of habitual offender status thereby waiving any error relating to his habitual offender status.[12]

Moreover, the purpose of requiring a prosecutor to promptly file an information charging defendant as a habitual offender is "to provide the accused with notice, at an early stage, of the potential consequences should the accused be convicted of the underlying offense."[13] Defendant makes no claim that he was not served with a notice of the intent to enhance his sentence. Indeed, defendant specifically acknowledged receiving such notice.

Defendant directs this Court to several cases that purportedly support his position that resentencing is in order when the court file lacks a proof of service under MCL 769.13(2). However, in the cases cited, *People v Cobley*, 463 Mich 893 (2000) and *People v Muhammad*, 498 Mich 909 (2015), the pertinent and controlling issue was whether the prosecutor had served a notice of intent to seek an enhanced sentence on defendant at all—not whether a proof of service was in the court file. Here, in contrast, defendant admitted that he was given a notice of the prosecutor's intent to seek habitual offender enhancement. Thus, any error by the prosecution in failing to follow the statutory mandate to file a proof of service of the notice of intent was harmless beyond a reasonable doubt. The absence of a proof of service in no way prejudiced defendant's ability to respond to his habitual offender status.[14] And because the error did not affect defendant's substantial rights, resentencing is not required.[15]

---

[11] MCL 769.13 (citations omitted).

[12] See *People v Siterlet*, 495 Mich 919 (2013) ("[T]he defendant waived any error in the untimely amendment of the habitual offender enhancement notice by repeatedly admitting his status as a fourth habitual offender. This waiver extinguished any error.").

[13] *People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982).

[14] *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

[15] This Court previously remanded this matter to the trial court to allow defendant to move for resentencing on the basis of having been erroneously sentenced as a third, rather than second,

Next, in a supplemental Standard 4 brief filed under Administrative Order No. 2004-6, defendant raises several unpreserved issues of alleged evidentiary error that he asserts denied him his rights to confront witnesses against him and to a fair trial. We find none of these issues to have merit.

Constitutional questions are reviewed de novo.[16] "This Court reviews the effect of an unpreserved constitutional error under the plain-error standard."[17] "Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings."[18]

We first note that one of the claimed evidentiary errors, concerning Jenkins's testimony as to what defendant's brother Demetrius said, occurred at the preliminary examination. A preliminary examination is not constitutionally required, so any errors would be harmless so long as defendant was subsequently convicted at an otherwise fair trial.[19] As will be discussed later, because defendant was fairly convicted of the crimes at trial, any evidentiary error that occurred at defendant's preliminary examination was harmless.

Concerning the right to confront witnesses, and to the extent that defendant may be challenging Jenkins's similar statement made at trial, the Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."[20] Michigan also affords criminal defendants the right to "be confronted with the witnesses against him . . . ."[21] "[W]e understand from the constitution that the right of confrontation is concerned with a specific type of out-of-court statement, i.e., the statements of 'witnesses,' those people who bear testimony against a defendant."[22] Conversely, out-of-court statements that are considered "nontestimonial" do not implicate the Confrontation Clause.[23]

At trial, Jenkins testified that immediately before the shooting, Demetrius said, "Oh s**t, there go my brother." Introduction of this statement did not violate the Confrontation Clause

---

habitual offender. *People v Howell*, unpublished order of the Court of Appeals, entered September 9, 2016 (Docket No. 331901). On remand, the trial court sentenced defendant to the same terms of imprisonment and probation.

[16] *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009).

[17] *Id*.

[18] *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005).

[19] See *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016).

[20] US Const, Am VI.

[21] Const 1963, art 1, § 20.

[22] *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011).

[23] *People v Taylor*, 482 Mich 368, 374; 759 NW2d 361 (2008).

because it was not "made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial."[24]  Moreover, even if Demetrius's statement could be construed as testimonial, its introduction at trial was harmless in light of Jenkins's other testimony.  Jenkins personally saw defendant outside immediately after the shooting, holding what appeared to be an AK-47 with a banana clip.  As defendant's cousin, Jenkins was able to identify defendant as the person he saw without difficulty.  Thus, Jenkins's reference to what Demetrius said was of minimal impact and did not affect defendant's substantial rights.

Lastly, defendant challenges the admission of a photograph depicting him holding a gun as unduly prejudicial and irrelevant.  As stated in *People v Brooks*:

> Relevant evidence is admissible while irrelevant evidence is not. MRE 402. Even relevant evidence may be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403. Relevant evidence is evidence that tends to make the existence of any fact at issue more probable or less probable than it would be without the evidence. MRE 401.[25]

The photograph at issue was admitted during the prosecutor's cross-examination of defendant's fiancé, Diahisha Hill, concerning defendant's ownership and use of guns.  The photograph was arguably irrelevant because the photograph did not show defendant with the weapon that was used in the incident at issue, but with a handgun.  And there is no indication that the photograph was taken close in time to the incident at issue.  The photograph is also arguably "other acts" evidence.

Use of other acts as evidence of character is prohibited, except as allowed by MRE 404(b), to avoid the danger of conviction based on a defendant's history of misconduct.[26]  To be admissible under MRE 404(b), other acts evidence generally must satisfy three requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice.[27]

The prosecution used the photograph here to attack Hill's credibility.  Hill testified that she did not know defendant to possess or own any guns and further testified that she had seen his Facebook page.  The photograph was taken from his Facebook page, indicating that Hill was not being truthful concerning her knowledge of defendant's possession of any gun.  The photograph was thus offered for the purpose of discrediting an alibi witness and was relevant to that purpose.  The photograph was prejudicial, to be certain, but it cannot be stated that its probative value was

---

[24] *People v Jackson*, 292 Mich App 583, 595; 808 NW2d 541 (2011).

[25] *People v Brooks*, 453 Mich 511, 517; 557 NW2d 106 (1996).

[26] *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998).

[27] *Id*. at 496.

substantially outweighed by its potential for unfair prejudice, particularly when this was a bench trial. The danger of unfair prejudice is minimal in a bench trial, where the trial court is presumed to understand how evidence is to be used.[28] Indeed, the trial court affirmatively stated that the only value it placed on the photograph was in assessing the credibility of defendant's fiancé.

In any event, even if the admission of the photograph was in error, it cannot be said that it affected the outcome of the proceedings. Jenkins clearly testified that he argued with defendant about being on his property, that defendant's stated intention was to return to "spray" the place up (which Jenkins understood to mean shoot the place up), and that gunfire broke out at his home a short time later. After the shots ceased, Jenkins saw defendant standing on the sidewalk holding what appeared to be an AK-47. Had the photograph been excluded from trial, the evidence still overwhelmingly pointed to defendant's guilt. Accordingly, the evidentiary errors raised by defendant fail.

Defendant next argues in his Standard 4 brief that the prosecutor engaged in several acts of misconduct that deprived him of his rights to a fair trial, due process, and to confront witnesses against him. We disagree.

Generally, a claim of prosecutorial misconduct is reviewed de novo.[29] However, a defendant's unpreserved claims of prosecutorial misconduct are reviewed for plain error.[30] In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative. *Id*. The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted).[31] "Prosecutorial-misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context."[32]

Defendant asserts that the prosecutor "coached" a witness during the witness's preliminary examination testimony and that the prosecutor elicited testimony from Jenkins at the preliminary examination that served to vouch for non-testifying witnesses. However, the test for prosecutorial misconduct is whether the defendant was denied a fair and impartial *trial*.[33] Thus, defendant must demonstrate that the alleged instance of misconduct at the preliminary examination somehow tainted his trial. Defendant here has made no such claim and cannot demonstrate the denial of a fair and impartial trial due to any alleged prosecutorial misconduct at the preliminary examination.

---

[28] See *People v Parker*, 319 Mich App 664, 672; __ NW2d __ (2017) (recognizing that a judge is "presumed to know how to sift through reliable versus unreliable evidence").

[29] *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001).

[30] *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

[31] *Id*.

[32] *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003).

[33] *Watson*, 245 Mich App at 586.

Defendant next takes issue with the prosecution's use of Jenkins's allegedly inconsistent testimony. Defendant first references Jenkins's statement contained in the police report, wherein he stated that he was told that defendant was back and had an AK-47. The report was not and could not have been admitted as evidence.[34] This statement could have been used for impeachment purposes, however, if it was inconsistent with Jenkins's later sworn testimony once a proper foundation was laid.[35] Moreover, while it is well established that the State may not knowingly use false testimony to obtain a tainted conviction and that the prosecution, in fact, has an affirmative duty to correct false testimony, not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony.[36] Rather, "it is the effect of a prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes."[37]

In this case, Jenkins's statement to police—that he was told by Demetrius that defendant was back and had an AK-47—was consistent with his preliminary examination testimony wherein he stated, "I seen him after the fire was—after he was firing. After he came back, his brother was like 'D**n, there go my brother with the AK in the alley,' " and "I couldn't see nothing. He was just letting go." At trial, Jenkins testified on direct examination that Demetrius said "Oh s**t, there go my brother," and that he, Jenkins, did not see defendant actually firing the shots.

The testimony about whether Demetrius told him he saw defendant with the AK-47 immediately before the shooting was not material to the court's ultimate conclusion at trial. Jenkins testified consistently that defendant said he would be back to "spray" the place up and that immediately after the shots were fired he saw defendant standing on the sidewalk with an AK 47, then take off running. Thus, the prosecutor did not use false testimony and had no duty to correct Jenkins's testimony as to what, specifically, Demetrius said immediately before the shooting. Defendant has not established any instance of prosecutorial misconduct, let alone any instance that deprived him of a fair trial.

Defendant next claims that there was insufficient evidence to convict him of some of the charged crimes. We disagree.

This Court reviews claims of insufficient evidence de novo, viewing the evidence in the light most favorable to the prosecutor, to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.[38]

---

[34] See *Latits v Phillips*, 298 Mich App 109, 113; 826 NW2d 190 (2012) (police reports are inadmissible as evidence at trial).

[35] *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995).

[36] *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).

[37] *Id*. at 476 (quotation marks and citation omitted).

[38] *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014).

MCL 750.234b(1) provides that "an individual who intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or a potentially occupied structure, whether or not the dwelling or structure is actually occupied at the time the firearm is discharged, is guilty of a felony . . . ." The prosecution must prove that the defendant intentionally discharged a firearm, the discharge was at a dwelling or occupied structure, and the defendant knew or had reason to believe that the facility was a dwelling or occupied structure.[39] Although "at" is not defined in the statute, dictionary definitions of the word "at" include "[t]o or toward the direction of" and "in, on, or near."[40]

Here, the evidence established that an assault weapon was fired toward Jenkins' home while he and several guests were on the front steps. The bullets damaged his vehicle that was parked in the driveway in front of the home. Bullets from the weapon also penetrated the neighbor's home, while the neighbor was home and sleeping. Jenkins testified that prior to the incident, he and defendant had argued and defendant affirmatively stated he would be back to "spray" the home up. While Jenkins did not see a weapon being fired, immediately after he heard shots he looked up and saw defendant standing on the sidewalk holding what appeared to be an AK-47. "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime."[41] Jenkins's testimony and the evidence recovered from the scene were sufficient to establish that defendant intentionally discharged a firearm at a dwelling or occupied structure that defendant knew or had reason to believe was occupied. There was thus sufficient evidence to convict defendant of discharge of a firearm at a building.

There was also sufficient evidence to convict defendant of felonious assault. "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery."[42] Jenkins unequivocally identified defendant as the individual holding an AK-47 moments after shots were fired and further indicated that defendant fled. While defendant did not actually shoot Jenkins or anyone else at the home, despite being relatively close in proximity to them, the act of shooting in Jenkins's general direction with an assault weapon was clearly an unlawful act which was intended to place Jenkins and all those present in reasonable apprehension of an immediate battery.[43]

The elements of felony-firearm are: (1) attempt or commission of a felony; (2) while in the possession of a firearm.[44] Because there was sufficient evidence to convict defendant of the

---

[39] See CJI2d 11.26a.

[40] *People v Wilson*, 230 Mich App 590, 592-593; 585 NW2d 24 (1998) (citations omitted).

[41] *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

[42] *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). See also MCL 750.82.

[43] See *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

[44] MCL 750.227b.

above two crimes, it follows that there was sufficient evidence to convict him of felony-firearm, as both offenses are felonies that were committed with the use of a firearm.

Defendant nevertheless states that the evidence was insufficient because the trial court relied on hearsay testimony, a witness's inconsistent statements, and witness misidentification. However, the trial court is presumed to know the law, such that we can generally assume that the trial court's verdict in a bench trial did not rest on unreliable or inadmissible evidence.[45] Defendant has not demonstrated otherwise.

Lastly, defendant avers that he was denied the right to the effective assistance of counsel due to trial counsel's failure to object to the admission of hearsay evidence, the vouching of one witness for another, non-testifying witness, and not moving for a mistrial, among other things. We do not find that defendant was deprived of the effective assistance of counsel.

Defendant did not file a motion for new trial with the trial court, nor did he move for a *Ginther*[46] hearing in the trial court. The issue is thus unpreserved. This Court's review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the record.[47]

The right to counsel during a criminal trial is guaranteed by both the United States and Michigan Constitutions.[48] This right is not merely to any assistance of counsel, but to effective assistance of counsel.[49] In order to show that counsel was ineffective, a defendant generally must show that: (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's errors, the results of the proceedings would be different; and (3) the result that did occur was fundamentally unfair or unreliable.[50] In other words, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.[51]

---

[45] See *People v Sherman-Huffman*, 466 Mich 39, 43; 642 NW2d 339 (2002) ("[A] trial judge in a bench trial knows the applicable law."). See also *People v Jones*, 168 Mich App 191, 194; 423 NW2d 614 (1988), overruled in part on other grounds by *People v Garrison*, 495 Mich 362; 852 NW2d 45 (2014) ("A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial.").

[46] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[47] *People v Crews*, 299 Mich App 381, 400; 829 NW2d 898 (2013).

[48] US Const, Am VI; Const 1963, art 1, § 20.

[49] *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012).

[50] *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

[51] *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

Effective assistance of counsel is presumed and the challenging defendant bears the heavy burden of proving otherwise.[52] The defendant must also overcome a strong presumption that counsel's performance constituted sound trial strategy.[53] Trial counsel is not ineffective when failing to make objections that lack merit.[54]

Defendant's argument that defense counsel was ineffective for failing to object to the prosecution's "vouching" for absent witnesses is easily disposed of, as no such vouching took place. There was nothing to which an objection could be posed.

Defendant's claim of ineffective assistance of counsel premised upon counsel's failure to object to hearsay testimony likewise fails. While Jenkins's trial testimony that Demetrius said, "Oh s**t, there go my brother," is likely hearsay, we again note that judges, unlike jurors, possess an understanding of the law which allows them to ignore evidentiary errors and to decide a case based solely on the evidence properly admitted at trial.[55] Thus, had defense counsel objected to the testimony, the impact on the trial would have been minimal. This is particularly so when Jenkins also testified that immediately after the shooting he clearly saw defendant standing in front of the house holding an AK-47.

With respect to counsel's failure to object to Jenkins' inconsistent statements, the only inconsistency is that at the preliminary examination Jenkins testified that Demetrius told him he saw defendant with an AK-47 just prior to the shooting and at trial Jenkins testified that Demetrius simply told him he saw defendant just prior to the shooting. Jenkins's testimony at trial was more beneficial to defendant than was his preliminary examination testimony. Thus, it was likely trial strategy not to clarify the testimony, attempt to impeach Jenkins with any prior inconsistent statement, or even point out that it was inconsistent with his preliminary examination testimony. This was sound trial strategy and counsel's not objecting was reasonable.

Addressing counsel's failure to object to the admission of the photograph, even if the photograph was inadmissible, it is assumed that the trial court's verdict rested upon evidence properly offered and not upon the inadmissible evidence.[56] At this bench trial, the court specifically stated that the only value in the photograph was in assisting the court in assessing the credibility of defendant's fiancé. Given the eyewitness testimony of Jenkins, defendant has not shown that any error in the admission of the photograph was outcome determinative.

---

[52] *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

[53] *Riley*, 468 Mich at 140.

[54] *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

[55] See *Sherman-Huffman*, 466 Mich at 43; *Jones*, 168 Mich App at 194.

[56] See *Sherman-Huffman*, 466 Mich at 43; *Jones*, 168 Mich App at 194.

Because counsel was not ineffective, there would be no basis for a mistrial. Defendant's argument otherwise is without elaboration and without merit.

Affirmed.

/s/ Michael J. Talbot
/s/ Stephen L. Borrello
/s/ Michael J. Riordan