*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

FRANK KING,

       Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 346559
Macomb Circuit Court
LC No. 2017-000895-FH

Before: SWARTZLE, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] his conviction by no-contest plea of first-degree home invasion, MCL 750.110a(2). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 72 to 360 months' imprisonment. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Approximately two months before his trial, defendant filed a written motion in the trial court requesting that his attorney's representation be terminated and simultaneously expressing defendant's desire to exercise his constitutional right to represent himself. A hearing was held on the motion, at which defendant explained that he had "pending motions" in the trial court asserting "some defenses" that defendant did not believe his attorney was going to pursue. Defense counsel informed the trial court that he was not aware of any pending motions or any defenses that had not been investigated, that he believed the matter was ready for trial, and that he could "assert any

---

[1] This Court denied defendant's delayed application for leave to appeal. *People v King*, unpublished order of the Court of Appeals, entered February 20, 2019 (Docket No. 346559). The Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court "for consideration as on leave granted to address: (1) whether the defendant's waiver of his Sixth Amendment right to counsel was constitutionally valid; and (2) if so, what effect, if any, the defendant's subsequent no contest plea had on that waiver." *People v King*, 505 Mich 851 (2019).

defenses the defendant wishes that are reasonable." The trial court inquired of defendant as follows, after which, the hearing immediately concluded:

> *The Court*: How do you want to proceed, [defendant], because I'm not going to appoint another attorney. You've already been through several. This matter is set for trial.

> [*Defendant*]: I'll proceed in pro per, your Honor.

> *The Court*: All right. I'm going to keep [defense counsel] on for advisory, as advisory counsel only.

> [*Defense Counsel*]: Very well.

> *The Court*: Be prepared to try your case, sir.

> [*Defendant*]: Yes, sir. Thank you, your Honor.

After defendant's trial began, defendant elected to enter a no-contest plea under a *Cobbs*[2] agreement to his first-degree home invasion charge. In the taking of defendant's plea, the trial court engaged in a lengthy plea colloquy with defendant:

> *The Court*: Do you understand, [defendant], that if we did not have this plea resolution to your case that we would continue the jury trial, which we are doing, we were actually in the middle of at this point.

> [*Defendant*]: I understand that, your Honor.

> *The Court*: It's my understanding, sir, that you wish to waive your right to have a jury trial and that you wish to plead no contest to these charges; is that true, sir?

> [*Defendant*]: Yes, your Honor.

> *The Court*: All right. Do you understand that you do have your right to have an attorney represent you. If you cannot afford an attorney, the Court will appoint an attorney to represent you.

> Do you understand that, sir?

> [*Defendant*]: Yes, your Honor, I do.

> *The Court*: And you do have advisory counsel here with you today, [defense counsel], correct?

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[*Defendant*]: That's correct, your Honor.

*The Court*: Have you had enough time to meet with [defense counsel] and to discuss this case and your decision here today to waive any further proceedings on your jury trial and your decision to plead no contest to the charges as charged?

[*Defendant*]: That's correct, your Honor.

The trial court next discussed the maximum penalty for defendant's first-degree home invasion charge and the effect of being sentenced as a fourth-offense habitual offender, and defendant indicated that he understood the potential penalties. The colloquy continued:

*The Court*: All right. And when you had the chance to meet with your attorney just now, did you also review or discuss the rights that are contained on the Advice of Rights form that I'm holding?

[*Defendant*]: I did, your Honor.

*The Court*: All right. You read or discussed those rights with your attorney, [defense counsel]?

[*Defendant*]: I did, your Honor.

*The Court*: Is that your signature on this form, sir?

[*Defendant*]: It is, your Honor.

*The Court*: You understood those rights?

[*Defendant*]: Yes, sir.

*The Court*: All right. Sir, two things. Your attorney is requesting that I accept a no contest plea due to potential civil liability arising out of this circumstance. Do you understand that?

[*Defendant*]: Excuse me.

*The Court*: Your attorney is requesting that I accept a no contest plea to these charges to avoid potential civil liability that's arising out of this incident.

[*Defendant*]: Yes, your Honor.

*The Court*: All right. Do you understand that the Court will treat a no contest plea the same as if you pled guilty today for purposes of the plea, your conviction and sentencing? Do you understand that?

[*Defendant*]: Yes, your Honor, I do.

*The Court*: All right. Do you also understand, sir, that your attorney has also requested a Cobbs evaluation, which we discussed before we started the jury trial, and that was that I sentence you in the bottom-third of the sentencing guidelines, which the sentencing guidelines were determined to be estimated at 72 months to 240 months at the low end, all the way up to the maximum, which would be life in prison. And, there's a request that I not exceed the 72 months at the time of sentencing and that if I'm not able to do that at the time of sentencing, that I allow you to withdraw this plea and set the matter for trial.

Do you understand that?

[*Defendant*]: I do, your Honor.

*The Court*: Do you also understand, sir, that your—because of your parole status at the time of this incident, that you could be, that sentencing in this matter, that your potential incarceration or sentencing in this matter would be consecutive, meaning after any parole violation? So you'd have to serve out your parole violation first before you would get any credit on this case. Do you understand that, sir?

[*Defendant*]: Yes, your Honor. Thank you. That's good.

*The Court*: Okay. Do you understand, also understand that any time that you're serving now because of the parole violation, that you would not be entitled to any jail credit?

[*Defendant*]: I understand that.

*The Court*: All right. Knowing all those things, sir, do you still wish to proceed with this plea?

[*Defendant*]: Yes. Yes, your Honor, I do.

*The Court*: All right. Do you understand that if I do accept your no contest plea today, that you will not have a trial of any kind and that this charge will become a conviction on your criminal history?

[*Defendant*]: I understand that, your Honor.

*The Court*: Do you also understand, sir, that if I accept your no contest plea today that any appeal from the conviction or the sentence would require that you file an application for leave to appeal to the Michigan Court of Appeals?

[*Defendant*]: Huh—

*The Court*: Hold on, [defendant], which means, [defendant], that you would have to ask the Court of Appeals whether or not they would hear or even consider

-4-

your case. You would not be entitled to an automatic appeal or an appeal as of right.

Do you understand that?

[*Defendant*]: I understand.

*The Court*: All right. Knowing that, sir, do you still wish to proceed with this plea?

[*Defendant*]: Yes, sir.

*The Court*: All right. Sir, you understand that by pleading no contest today that you are waiving each and every one of the rights that are contained on the Advice of Rights form that I'm holding up, that you signed?

[*Defendant*]: I do, your Honor.

*The Court*: Sir, that would include waiving your right to have a trial in this court by a judge or judge and jury. You're waiving your right to be presumed innocent until proven guilty beyond a reasonable doubt. You're waiving your right to present any evidence at your trial, including waiving your right to have witnesses come to this court to testify for you in your defense. You're waiving your right to have the court order them to appear, if necessary. You're also waiving your right to appear in court and to confront or question every witness that the People bring against you. And you're also waiving your right to testify. You could take the witness stand, [defendant], and you would be your own witness or you could remain silent and not have your silence used against you.

Do you understand that by pleading no contest today, sir, that you are waiving each and every one of the rights that I just discussed with you?

[*Defendant*]: I understand, Judge.

*The Court*: All right. [Defendant], has anybody threatened you in any way, either today or throughout this process, to have you waive your rights and to plead no contest today?

[*Defendant*]: No, no, your Honor.

*The Court*: All right. [Defendant], has anybody promised you anything at all to have you waive your rights today and to plead no contest?

[*Prosecutor*]: Other than the Cobbs evaluation.

[*Defendant*]: Other than the Cobbs agreement?

*The Court*: Other than the Cobbs evaluation, sir.

[*Defendant*]: No, sir.

*The Court*: All right. Are you, are you waiving your rights, sir, and pleading no contest freely and voluntarily?

[*Defendant*]: I am, your Honor.

*The Court*: It's your own decision today, after meeting with your advisory counsel, to discontinue this trial, to waive your rights, and to plead no contest?

[*Defendant*]: It is, your Honor.

After establishing a factual basis for the underlying crime and defendant's status as a fourth-offense habitual offender, the trial court accepted defendant's no-contest plea. The trial court sentenced defendant as previously noted.

After this Court denied defendant's delayed application for leave to appeal,[3] our Supreme Court remanded this matter to this Court "for consideration as on leave granted to address: (1) whether the defendant's waiver of his Sixth Amendment right to counsel was constitutionally valid; and (2) if so, what effect, if any, the defendant's subsequent no contest plea had on that waiver." *People v King*, 505 Mich 851 (2019).

## II. WAIVER OF COUNSEL

Defendant argues that his waiver of counsel when he asserted his right to represent himself was ineffective because the trial court failed to substantially comply with the applicable procedural requirements set forth by the Michigan Supreme Court in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and in MCR 6.005(D). Defendant maintains that as a result, he was totally deprived of the right to counsel during critical stages of the proceedings and that his rights protected by the Sixth and Fourteenth Amendments of the United States Constitution were violated.

### A. STANDARD OF REVIEW

A trial court's factual findings surrounding a defendant's waiver of the right to counsel are reviewed for clear error, but this Court's review is de novo "to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts." *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004).

However, defendant did not object to the trial court's ruling permitting him to represent himself or otherwise challenge the validity of his waiver of counsel in the trial court. Therefore, this issue is unpreserved. *People v Cain*, 498 Mich 108, 114-115; 869 NW2d 829 (2015) (explaining that an issue is unpreserved for appeal if the appellant did not timely raise the issue in

---

[3] *King*, unpub order.

the trial court). Although defendant's claim that he was completely deprived of counsel during critical stages of criminal proceedings constitutes a claim of structural error, *Russell*, 471 Mich at 194 n 29, unpreserved claims of structural error are still reviewed for plain error affecting substantial rights. *Cain*, 498 Mich at 117 n 4.

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. If "a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

The right to the assistance of counsel at all critical stages of criminal proceedings for an accused facing incarceration is protected by the Sixth Amendment, which is applicable to the states through the Fourteenth Amendment. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004), citing *Maine v Moulton*, 474 US 159, 170; 106 S Ct 477; 88 L Ed 2d 481 (1985), and *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963); see also US Const, Ams VI and XIV. Trial is a critical stage, *Russell*, 471 Mich at 188, as is a plea hearing, *Iowa v Tovar*, 541 US 77, 87; 124 S Ct 1379; 158 L Ed 2d 209 (2004). The right of self-representation is also protected by the Sixth and Fourteenth Amendments. See *Faretta v California*, 422 US 806, 818-821; 95 S Ct 2525; 45 L Ed 2d 562 (1975). Both the right to self-representation and the right to counsel are additionally protected by the Michigan Constitution. Const 1963, art 1, §§ 13 and 20.

Choosing self-representation necessarily entails relinquishing the right to be represented by counsel. *Faretta*, 422 US at 835. Thus, the Constitution requires a defendant to give a "knowing, voluntary, and intelligent" waiver of the right to counsel in order to exercise the right to self-representation. *Tovar*, 541 US at 87-88. The United States Supreme Court has "described a waiver of counsel as intelligent when the defendant knows what he is doing and his choice is made with eyes open." *Id*. at 88 (quotation marks and citation omitted).

In Michigan, our Supreme Court has set forth three requirements to be satisfied before granting a defendant's request to waive the assistance of counsel and exercise the right of self-representation: (1) "the request must be unequivocal"; (2) "the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily," making the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open"; and (3) "the trial judge [must] determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Anderson*, 398 Mich at 367-368. The trial court also must fulfill the requirements of MCR 6.005(D). *Russell*, 471 Mich at 190. MCR 6.005(D) provides that "[t]he court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first" doing the following:

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and [MCR 6.005(D)], then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. at 191 (quotation marks and citation omitted).

In this case, the trial court did not address any of the requirements in *Anderson* or the court rule before permitting defendant to represent himself, instead merely telling defendant that he would have standby counsel and that he should be "prepared to try [his] case." Before granting defendant's request to represent himself, the trial court did not discuss the dangers of self-representation or the potential penalties, and the trial court did not make any findings regarding whether defendant made an understanding and voluntary waiver of counsel. MCR 6.005(D); *Anderson*, 398 Mich at 367-368; *Russell*, 471 Mich at 191. The record therefore indicates that the trial court failed to comply with the substance of *Anderson* and the court rule, contrary to the clear instructions of our Supreme Court for effectuating a valid waiver of the right to counsel.[4] *Russell*, 471 Mich at 191-192. This was error, and it was plain. *Carines*, 460 Mich at 763. With respect to the prejudice prong of the plain error standard, our Supreme Court has indicated that an unpreserved claim of plain structural error is sufficient in itself to satisfy the third *Carines* prong. *People v Vaughn*, 491 Mich 642, 666; 821 NW2d 288 (2012).

Nevertheless, even if the first three prongs of the plain error standard have been established, we still must exercise our discretion to determine whether reversal is warranted under the fourth *Carines* prong. *Carines*, 460 Mich at 763-764. Defendant does not claim that he is actually innocent, so the question becomes whether the trial court's plain error in this case "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original). "[T]he fourth *Carines* prong is meant to be applied on a case-specific and fact-intensive basis." *Cain*, 498 Mich at 121. Reversal is not justified under the fourth *Carines* prong if the "underlying purposes"

---

[4] We acknowledge that defendant had been appointed counsel before he requested to represent himself, thus satisfying MCR 6.005(D)(2). Defendant's request also was clearly unequivocal. However, the trial court failed to acknowledge on the record the applicable legal framework implicated when a defendant requests to exercise the right to self-representation. Most importantly, the trial court did not fulfill its responsibility to create a record of the other substantive requirements relative to demonstrating that defendant relinquished the assistance of his appointed counsel through a knowing, intelligent, and voluntary waiver.

of the right at issue have been alternatively upheld.  *Id*. at 119.  We affirm because here, the underlying purposes of the right were alternatively upheld during defendant's *Cobbs* plea.

In this case, defendant claims he suffered a complete deprivation of the right to counsel. "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction *resulting from his own ignorance of his legal and constitutional rights*, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution."  *Johnson v Zerbst*, 304 US 458, 465; 58 S Ct 1019; 82 L Ed 1461 (1938) (emphasis added).

In considering whether the underlying purposes of the right to counsel were protected in this case despite the trial court's failure to create a record demonstrating a proper knowing and voluntary waiver of this right, we first observe that the record indicates that defendant made it evident to the trial court that he, in fact, was *not* ignorant of his legal and constitutional rights.  *Id*. Defendant filed a written motion seeking to terminate his attorney's representation and to instead represent himself.  In this motion, defendant claimed that defense counsel had declined to file and investigate defenses and pretrial motions that defendant had expressed a desire to pursue. Defendant further stated in this motion that "the defendant has a Constitutional right to self-representation and wishes to exercise that right (U.S. Constitution Amendment VI; *Faretta v. California*, 442 US 806: 955. Ct. 2525:)" and that "[t]he defendant does not assert the right to self-representation for any frivolous purpose, neither to burden or disrupt the proceedings or business of the Court, but in all proceedings to observe the appropriate standards of decorum."

Defendant cited the United States Supreme Court's seminal case regarding the right to self-representation in his motion and thus presumably was aware both of the constitutional rights at stake and the *Faretta* Court's statement that "in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."  *Faretta*, 422 US at 834.[5] Defendant's motion also mirrored substantive language in found in *Anderson*, 398 Mich at 367-368.  Accordingly, despite the trial court failing to create an adequate record regarding defendant's waiver, defendant nonetheless made it apparent that his assertion of the right to self-representation was unequivocal, that he understood the rights and risks involved in his request, that he possessed an understanding of the applicable legal rules and procedures involved in asserting his request, and that he would not unduly burden or inconvenience the court.  We conclude that on this record, defendant demonstrated that he knew what he was doing and chose to represent himself with "his eyes open."  *Anderson*, 398 Mich at 368, 370-371 (concluding in *People v Overby*, the companion case in *Anderson*, that the trial court reversibly erred by denying the defendant's request to represent himself where, although the trial court had not specifically warned the defendant about the dangers of self-representation, the defendant had expressed his requests in a "sophisticated and comprehensive" manner that included citation to relevant legal authority and demonstrated that he "knew what he was doing and made his choice with his eyes open").

---

[5] We note that defendant's written motion appears to contain defendant's signature and defendant informed the trial court during defendant's plea hearing that he could read, write, and understand the English language.

Next, our exercise of discretion under the fourth *Carines* prong is significantly influenced in this case by the fact that defendant was convicted by plea *and* the record reflects that defense counsel played a significant role in the plea process, advising defendant in much the same way as if he had been in his typical representative role with respect to defendant even though defense counsel was purportedly only serving in a "standby" capacity. As recited above, the trial court conducted a thorough and extensive plea colloquy with defendant, during which defendant affirmatively indicated that he understood that he had a right to counsel and further indicated that he had sufficient time to discuss his case and his plea decision with his appointed defense counsel. The plea transcript also reflects that defense counsel requested the no-contest plea to avoid potential civil liability, as well as defense counsel's negotiation of the *Cobbs* agreement. Additionally, defense counsel stated on the record during the sentencing hearing that "[a]t the time the plea was taken, I know we spent a great deal of time with the court in chambers and on the record working out a Cobbs Agreement." Defendant did not object to this representation.

Defendant in this case thus appears, by either consent or acquiescence, to have actually reaped the benefits of being represented by counsel despite purporting to represent himself. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle v Wiggins*, 465 US 168, 183; 104 S Ct 944; 79 L Ed 2d 122 (1984). "A defendant can waive his *Faretta* rights," and "[p]articipation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable." *Id*. at 182. Hence, the record in this case reflects that defendant was still significantly protected by defense counsel from any ignorance of legal or constitutional rights that defendant may have harbored.[6] See *Zerbst*, 304 US at 465.

Under the circumstances of this particular case, despite the clear deficiencies in the trial court's approach to granting defendant's request for self-representation, the record simply does not indicate that defendant's conviction somehow resulted from his "own ignorance of his legal and constitutional rights" or that the overarching purposes of the constitutional right to counsel were undermined. *Id*. Hence, despite the trial court's plain error, record evidence reveals that defendant enjoyed the benefits of appointed counsel to such a degree that the underlying purposes of the right were alternatively upheld during defendant's *Cobbs* plea. *Cain*, 498 Mich at 119. As a result of our so finding, reversal is not warranted.

Affirmed.

/s/ Kathleen Jansen
/s/ Stephen L. Borrello

---

[6] We are aware that the mere presence of standby counsel does not cure an error such as the one that occurred in this case. *People v Willing*, 267 Mich App 208, 227-228; 704 NW2d 472 (2005). Regrettably, this is seemingly the state's sole argument on appeal, that the trial court's allowance of stand-by counsel cured the constitutional defect in defendant's waiver. Such an assertion is erroneous. Instead, what informs our exercise of discretion under the fourth *Carines* prong in the instant case is the substantial nature and extent of the record evidence of cooperative involvement of defense counsel with defendant following his request for self-representation.