# Court of Appeals, State of Michigan

## ORDER

People of MI v Michael A Palmer Jr

Docket No. 345456

LC No. 2018-265979-FH

Jonathan Tukel
Presiding Judge

Jane E. Markey

Brock A. Swartzle
Judges

The motion for partial reconsideration is GRANTED, and this Court's opinion issued April 2, 2020 is hereby VACATED. A new opinion is attached to this order.

_Presiding Judge_

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 7, 2021
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL A. PALMER, JR.,

        Defendant-Appellant.

UNPUBLISHED
January 7, 2021

No. 345456
Oakland Circuit Court
LC No. 2018-265979-FH

ON RECONSIDERATION

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with a deadly weapon (felonious assault), MCL 750.82, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to prison terms of two to six years on the felonious-assault conviction, 1½ to 7½ years on the felon-in-possession convictions, and to consecutive two-year terms for the felony-firearm convictions. Defendant appeals as of right. We affirm all of defendant's convictions and his felonious assault and felony-firearm sentences, but we vacate defendant's felon-in-possession sentences. We remand for resentencing for defendant's felon-in-possession convictions. We do not retain jurisdiction.

In May of 2017, defendant allegedly shoved his girlfriend, with whom he lived, and later that evening pointed a gun at her head while stating, "I could end you right now." Then, on January 7, 2018, defendant allegedly attacked his girlfriend with a hatchet and attempted to choke her.

Defendant raises several arguments on appeal. First, he argues that he was deprived of his constitutional right to a properly instructed jury when the trial court referred the jury to its original instructions when it asked whether a fist constitutes a "dangerous weapon." Second, he argues that he was deprived of his constitutional right to be free from unreasonable searches and seizures when his safe was seized and subsequently searched. Third, he argues that, at a minimum,

-1-

resentencing is required because the trial court erroneously scored offense variable (OV) 7 and prior record variable (PRV) 5. Finally, in a pro per brief filed pursuant to Administrative Order 2004-6, Standard No. 4, defendant raises several arguments regarding the prosecution's use of a video from his cell phone at trial. Defendant also argues that he was denied the effective assistance of counsel. We hold that the trial court erred by assessing five points for PRV 5 and that, as a result, defendant's felon-in-possession sentences were outside the correct sentencing guidelines range. Thus, we remand for resentencing of those two convictions; we affirm in all other respects.

## I. SUPPLEMENTAL JURY INSTRUCTION

Defendant first argues that the trial court erred by instructing the jury to "see instructions" when the jury asked whether "fists [are] also considered dangerous weapons." We disagree.

Waiver occurs when a defendant "affirmatively approve[s]" of an issue before the trial court, only to later argue on appeal that there was error. *People v Jackson*, 313 Mich App 409, 420; 884 NW2d 297 (2015). "Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence," a defendant's approval of a trial court decision waives the right to appeal. *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproved in part on other grounds 469 Mich 967 (2003) (citation and quotation marks omitted). When waiver occurs, any error is extinguished "and precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209, 215; 612 NW2d 144 (2000).

Defendant argues that his trial counsel was ineffective for failing to request that the trial court give an additional jury instruction in response to the jury's question about whether fists are considered dangerous weapons. As such, defendant essentially argues that his trial counsel should not have consented to the trial court's decision to refer the jury to the instructions that had already been given on the matter. Consequently, we do not consider the issue waived and choose to address it on the merits.[1] But because defendant's trial counsel failed to object to the jury instructions the issue is unpreserved. See *People v Sabin* (On Second Remand), 242 Mich App 656, 657; 620 NW2d 19 (2000) ("A party must object or request a given jury instruction to preserve the error for review.").

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these

---

[1] Additionally, we note that the record does not establish an affirmative waiver of the issue. Rather, the record only contains the trial judge's statement that the parties agreed to refer the jury to the existing instructions instead of directly answering fists can be considered dangerous weapons. Thus, we do not have any record of defendant's "affirmative approval" so the issue is also not waived for this reason.

-2-

three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018). In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 239-240; 851 NW2d 856 (2014) (citations and quotation marks omitted). Furthermore, "[t]he trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*. This Court "will not reverse where the jury instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (citation and quotation marks omitted). The trial judge must instruct the jury " 'as to the law applicable to the case.' " *People v Jones*, 497 Mich 155, 170; 860 NW2d 112 (2014) (quoting MCL 768.29). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v Kibbe*, 431 US 145, 155; 97 S Ct 1730; 52 L Ed 2d 203 (1977). Thus, "[n]o error results from the absence of an instruction as long as the instructions as a whole cover the substance of the missing instruction." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

This Court has previously held that bare hands are not "dangerous weapons" for purposes of a felonious-assault charge. *People v Malkowski*, 198 Mich App 610, 614; 499 NW2d 450 (1993), overruled in part on other grounds *People v Edgett*, 220 Mich App 686 (1996); see also *People v VanDiver*, 80 Mich App 352, 356–357, 263 NW2d 370 (1977). Defendant's felonious-assault charge was premised entirely on his use of a single dangerous weapon: the hatchet. Specifically, the court instructed the jury as follows:

> In count six, the defendant is charged with the crime of felonious assault and to prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant either attempted to commit a battery on [the victim] or did an act that would cause a reasonable person to fear or apprehend an immediate battery. A battery is a forceful or violent touching of the person or something closely connected with the person. Second, that the defendant intended either to injur[e] [the victim] or to make [her] reasonably fear an immediate battery. Third, that at the time defendant had the ability to commit a battery, appeared to have the ability or thought he had the ability. Fourth, that the defendant committed the assault with *a hatchet*.

A dangerous weapon is any object that's used in a way that is likely to cause . . . serious injury or death. Some objects such as guns or bombs are dangerous because they are specifically designed to be dangerous. Other objects are designed for peaceful purposes but may be used as dangerous weapons. The way an object is used or intended to be used in an assault determines whether or not it's a dangerous weapon. If an object is used in a way that is likely to cause serious physical injury or death it is a dangerous weapon. You must decide from all the facts and circumstances whether the evidence shows that *the hatchet* in question here was a dangerous weapon. [Emphasis added.]

"Jury instructions must be read as a whole rather than extracted piecemeal to establish error." *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997). This Court presumes that the jury did, in fact, follow its instructions. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Here, however, for whatever reason, the jury was initially confused as to the definition of "dangerous weapon," and asked the trial court to clarify. We review a trial court's response to jury questions for abuse of discretion. *People v Parker*, 230 Mich App 677, 681, 584 NW2d 753 (1998).

Here, the trial court referred the jury back to the definitions of dangerous weapon which it had previously given, and which correctly excluded fists from the definition. While the trial court might have more directly answered the jury's question by stating that fists alone cannot constitute a dangerous weapon, as defendant argues that it was incumbent on the trial court to do, the law presumes that juries follow their instructions. Thus, we presume that the jury, after prompting by the trial court, referred back to the correct instruction initially given, and followed it. Moreover, the abuse of discretion standard recognizes that there is more than one principled outcome to an issue. *People v. Babcock*, 469 Mich. 247, 269; 666 NW2d 231 (2003). Therefore, while the trial court could have more directly answered the jury's question, its action of referring the jury back to the original, correct instructions was within the range of principled outcomes. Furthermore, because any objection to the trial court's response to the jury would have been meritless, defendant's trial attorney was not ineffective for failing to request a more specific response to the jury's question. See *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007) ("Counsel is not ineffective for failing to make a futile objection.").

## II. SEIZURE AND SEARCH OF DEFENDANT'S SAFE

Defendant next argues that his felon-in-possession and felony-firearm convictions should be reversed because the search and seizure of his safe, which was in the victim's apartment, was unconstitutional.[2] Defendant did not preserve his constitutional challenge with respect to the

---

[2] When searched, the safe contained a handgun, a holster, magazine pouches, a loader, gun locks, a barrel bore cleaner, ammunition, a variety of documents (such as defendant's birth certificate, the title to his van, his registration and insurance documentation, and the title application for his van), and a receipt for the purchase of the gun in the name of a third-party. The third-party testified that she was defendant's former girlfriend and the mother of his two children, that she was the owner of the handgun, and that she had sent it to the address where defendant and the

-4-

search and seizure of the safe by objecting to the admission of the evidence below. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Consequently, the issue is reviewed for plain error. *Cain*, 498 Mich at 116.

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v Place*, 462 US 696, 700; 103 S Ct 2637; 77 L Ed 2d 110 (1983) (emphasis omitted). "The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment right of citizens to be free from unreasonable searches and seizures." *People v Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003). "The exclusionary rule, modified by several exceptions, generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search." *Id.* at 498-499 (footnote omitted).

## A. SEIZURE OF THE SAFE

Defendant first takes issue with the seizure of the safe. "[I]n the context of personal property, and particularly containers, the Fourth Amendment challenge is typically to the subsequent search of the container rather than to its initial seizure by the authorities . . . ." *Place*, 462 US at 700-701. However, the United States Supreme Court has generally "viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Id.* at 701.[3] Despite this general rule, the United States Supreme Court has recognized that,

> [w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present. For example, objects such as weapons or contraband found in a public place may be seized by the police without a warrant, because, under these circumstances, the risk of the item's disappearance or use for its intended purpose before a warrant may be obtained outweighs the interest in possession. [*Id.* at 701-702 (citations and quotation marks omitted)]

Furthermore, another exigency-based exception applies when the seizure of the container is necessary to prevent the loss or destruction of suspected contraband. See, e.g., *United States v*

---

victim lived for defendant to arrange its sale. The gun was the basis of the felon-in-possession and felony-firearm convictions.

[3] Nonetheless, as of 1991, there were at least twenty-two exceptions to the warrant requirement. See *California v Acevedo*, 500 US 565, 582-583; 111 S Ct 1982; 114 L Ed 2d 619 (1991) (Scalia, J., concurring in the judgement).

*Jacobsen*, 466 US 109, 114; 104 S Ct 1652; 80 L Ed 2d 85 (1984) (recognizing that "government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband").

Here, officers were justified in seizing the safe without a warrant, because they had probable cause to believe that the safe contained contraband and there was an exigent circumstance, the risk of loss or destruction of suspected contraband. The victim identified the safe as the most likely location for the handgun, something defendant, a convicted felon, was prohibited by law from possessing. Additionally, a gun case was found next to the safe. This evidence established probable cause that the safe itself contained the firearm, which was contraband given defendant's status as a convicted felon. Moreover, defendant easily could have arranged for the disappearance of the gun, either personally following his release on bond, or even while in custody by calling someone to pick it up. Consequently, the fact that this evidence could have been destroyed, lost, or concealed permitted the safe's warrantless seizure. See *id*.

Because officers were permitted to seize the safe in order to prevent the loss or destruction of the suspected contraband inside, we conclude that defendant was not deprived of his Fourth Amendment rights as a result of the seizure of the safe. Because any challenge to the lawfulness of the seizure was without merit, defendant's trial attorney was not ineffective for failing to object to the safe's seizure. See *Chambers*, 277 Mich App at 11 ("Counsel is not ineffective for failing to make a futile objection.").

## B. THE SEARCH OF THE SAFE

Defendant also takes issue with the subsequent search itself of the safe, claiming that the search warrant inadequately described the items—"Any Firearms or parts, Any Ammunition"—to be seized. "The Fourth Amendment requires a warrant to 'particularly describ[e] the place to be searched, and the person or things to be seized.' " *People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007). "Under both federal law and Michigan law, the purpose of the particularization requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *People v Fetterly*, 229 Mich App 511, 543; 583 NW2d 199 (1998). Furthermore, "[t]he degree of specificity required depends on the circumstances and types of items involved." *Id*. Even such general descriptions as "evidence of homicide" can have the necessary degree of specificity "if probable cause exists to allow such breadth." *People v Unger*, 278 Mich App 210, 246; 749 NW2d 272 (2008).

The search warrant authorized a search for "Any Firearms or parts" and "Any Ammunition." Although these descriptions are, as defendant contends, broad, it cannot be said that they insufficiently described the type of items to be seized or to properly delineate the scope of a permissible search. Defendant, as a convicted felon, was prohibited by law from possessing *any* firearm or *any* ammunition. Thus, the search warrant properly categorized "Any Firearms or parts" and "Any Ammunition" as contraband subject to search and seizure. Consequently, the warrant had the necessary degree of specificity given the circumstances of this case. See *Fetterly*, 229 Mich App at 543.

Furthermore, searching for and then seizing the other items in the safe, such as the documents addressed earlier, was also proper under the plain view exception. "The plain view

exception to the warrant requirement allows a police officer to seize items in plain view if the officer is lawfully in the position to have that view and the evidence is obviously incriminatory." *People v Mahdi*, 317 Mich App 446, 462; 894 NW2d 732 (2016) (citation and quotation marks omitted). As noted, the officers were lawfully in a position to view the contents of the safe because they searched it pursuant to a valid warrant. Furthermore, owing to the safe's small size, the items in it were in plain view when the safe was opened. Finally, the incriminating nature of the documents found in the safe was immediately apparent because the documents had defendant's name on them and made it more probable that the safe and its contents also belonged to defendant. Thus, all of the items from the safe were properly and lawfully seized under the Fourth Amendment.

## III. OFFENSE VARIABLE 7 AND PRIOR RECORD VARIABLE 5

### A. OFFENSE VARIABLE 7

Defendant makes two challenges to the computation of his sentencing guidelines. He first argues that OV 7 should have been scored at zero points. "MCL 777.37 governs OV 7," *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013), and provides that OV 7 is to be scored at 50 points if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense," MCL 777.37(1)(a). In this case, the trial court correctly scored OV 7 based on at least two of the four possible categories identified in MCL 777.37(1)(a): sadism or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.

"Trial courts are afforded broad discretion in calculating sentencing guidelines, and appellate review of those calculations is very limited. Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996) (citation omitted).

MCL 777.37(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." Although the statute does not define the catchall category—"similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense"—the Michigan Supreme Court has defined it as "conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 441.

The facts and circumstances presented in this case satisfy both of those definitions. At trial, the victim testified that defendant told her that "tonight you're going to die, tonight is the night you die" and that "it was my time to die and that I deserved this attack, this beating." Likewise, the victim testified that defendant "just kept laughing and telling [her] that this is what [she] deserved and this was [her] last day on earth and it was [her] time to die." According to the victim, she honestly believed she was going to die. She said defendant additionally held the blade of the hatchet to her neck, cutting her with it, telling her to feel the blade with her finger, and even forcing her to feel it. He additionally laughed at her more, punched her, choked her, and damaged the wall with a hatchet, telling her she was "lucky" it was not her head. The victim also testified that defendant video-recorded her with her head down in a way that made her feel humiliated. All of this evidence was sufficient to justify scoring OV 7 at 50 points under either category.

## B. PRIOR RECORD VARIABLE 5

Defendant also argues that PRV 5, which addresses the scoring of misdemeanor convictions, should have been scored at zero points. However, under MCL 769.34(10),

> [i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

Thus, sentencing guidelines scoring issues are only reviewable if the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand. *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). Defendant failed to raise his PRV 5 challenge in any of the three permissible manners, bringing it up for the first time in this Court on appeal. As such, the PRV 5 issue is not properly before us and is unpreserved. See *Kimble*, 470 Mich at 310-311. Thus, we review the issue for plain error. See *Cain*, 498 Mich at 116.

As an initial matter, even if defendant is correct that PRV 5 was improperly scored, his felonious assault sentence still fell within the applicable guidelines range and therefore he is precluded under MCL 769.34(10) from challenging that sentence based on a PRV 5 challenge on appeal.[4] But if PRV 5 was scored at zero points that scoring error would change defendant's applicable sentencing guidelines range for his felon-in-possession convictions because those are Class E offenses, not Class F offenses like felonious assault. See MCL 777.16d; MCL 777.16m. Consequently, we must now determine whether PRV 5 was properly scored.

PRV 5 is enumerated in MCL 777.55, under which five points are appropriately assessed if "[t]he offender has 2 prior misdemeanor convictions or prior misdemeanor juvenile adjudications[.]" MCL 755.55(1)(d). For purposes of assessing PRV 5, a trial court will ordinarily "[c]ount all prior misdemeanor convictions and prior misdemeanor juvenile adjudications for operating or attempting to operate a vehicle . . . while under the influence of or impaired by alcohol, a controlled substance, or a combination of alcohol and a controlled substance." MCL 755.55(2)(b).

---

[4] Felonious assault is a Class F offense. MCL 777.16d. Defendant argues that PRV 5 should have been assessed zero points, which would have resulted in a PRV score of 20 points and placed him in PRV Level C. When combined with his placement in OV Level IV, this results in a recommended minimum guidelines range of 5 to 28 months. See MCL 777.67. Defendant's minimum sentence for his felonious assault conviction was two years. Thus, defendant's sentence fell within what he contends is the applicable guidelines range.

However, MCL 777.50 "applies to the scoring of multiple PRVs, 1 through 5." *People v Butler*, 315 Mich App 546, 551; 892 NW2d 6 (2016). It "addresses the question whether a defendant's prior criminal history should be considered *at all* because of a period of time spent as a law-abiding citizen" and "reflects a judgment by the Legislature that, if a person is able to go 10 years without a new conviction, that person should be able to leave his or her criminal past behind, even if the person later relapses and is convicted of a new crime." *Id.* at 552. As relevant here, MCL 777.50 provides:

> (1) In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

> (2) Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. *If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. . . .* [Emphasis added.]

Put differently, "if a 10-year gap between convictions exists so as to trigger the provisions of MCL 777.50, prior convictions of *all* sorts will be ignored" in assessing PRV 5. *Butler*, 315 Mich App at 551 (emphasis added).

Defendant's instant offenses were all committed on January 7, 2018. He had no juvenile adjudications, and the discharge date for his last misdemeanor conviction—for operating while intoxicated—was April 18, 2006, i.e., more than 10 years before he committed the offenses at issue here. Consequently, the trial court erred by assessing five points for PRV 5, which should instead have been assessed at zero points. See MCL 777.50; *Butler*, 315 Mich App at 551.

Moreover, because the trial court's error concerning PRV 5 affected defendant's minimum sentencing guidelines ranges for the felon-in-possession convictions, and his related minimum sentences exceed the properly scored guidelines ranges, the error constitutes plain error entitling defendant to resentencing with regard to those sentences. Felonious assault is a Class F felony, MCL 777.16d, whereas the felon-in-possession offenses are both Class E felonies, MCL 777.16m. The trial court assessed PRV 5 at five points, which resulted in a total PRV score of 25 points. Consequently, with regard to his felon-in-possession offenses, defendant was placed at PRV Level D ("25-49 points") on the applicable sentencing grid. See MCL 777.66. In concert with his total OV score of zero points, which placed him at OV Level I on the applicable sentencing grid, this resulted in minimum guidelines ranges for the felon-in-possession offenses of 5 to 23 months. See MCL 777.66. Because defendant was sentenced as a second-offense habitual offender, the upper limit of his minimum guideline range was elevated by 25%, resulting in minimum guideline ranges of 5 to 28 months. See MCL 777.21(3)(a). He was sentenced to 18 months for the felon-in-possession convictions.

With regard to those same convictions, had the trial court assessed zero points for PRV 5, defendant's total PRV score would have been 20 points, placing him at PRV Level C ("10-24 points") on the applicable sentencing grid, and his initial minimum guidelines ranges would have

been zero to six months.  See MCL 777.66.  As a second-offense habitual offender, the upper limit would again have been elevated by 25%, resulting in final minimum guideline ranges of zero to seven months.  See MCL 777.21(3)(a).  Consequently, defendant was sentenced outside the applicable guidelines range for his felon-in-possession convictions.  Thus, defendant is correct that he is entitled to resentencing with regard to those convictions.  See, e.g., *Kimble*, 470 Mich at 312-313 (finding that a scoring error like the one at issue here constituted plain error entitling the defendant to resentencing).

## IV.  PROSECUTION'S USE OF VIDEO AT TRIAL

Finally, in his Standard 4 brief, defendant raises three separate arguments challenging the prosecution's reliance on a video from defendant's cell phone of the night he assaulted the victim with the hatchet.  Specifically, defendant argues (1) that he was deprived of his constitutional right to due process because the prosecution knowingly relied on the victim's perjury; (2) that he was deprived of his constitutional right to a fair trial because the prosecution knowingly withheld exculpatory evidence, a *Brady* violation;[5] and (3) that the prosecution committed a fraud upon the court and misconduct when it relied on the video.

Defendant has failed to support his argument with the requisite factual predicate to even trigger the application of these legal principles.  The video at issue has the following automatically generated file name: "20180107__03341."[6]  Defendant relies entirely on the video's "Date modified," which reflects the date and time of January 13, 2018 at 2:40 a.m., to claim that the video was not created on the date of the charged offense.  Defendant provides *nothing* to support that contention, or to show that the video was not in fact modified on January 13.  Such a modification could have occurred, for example, when the victim transferred the video from defendant's cell phone to law enforcement.  More fundamentally, the victim testified and the prosecution argued that *defendant* recorded the video.  Defendant certainly knew or could have known well before trial whether the video played at trial was, in fact, one he recorded on the day of the assault.  Consequently, defendant's argument that this evidence was kept secret from him is unpersuasive.

## V.  CONCLUSION

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[6] This name appears to indicate that the video was originally created on January 7, 2018.  Specifically, the "2018" portion of the first part of that automatically generated file name reflects the year 2018, the "01" reflects the month of January, and the "07" reflects the date of the month, which is the date on which that the victim testified defendant video-recorded her during the assault.  Defendant offers no explanation to undermine this understanding.

For the reasons stated earlier, we affirm all of defendant's convictions and his felonious assault and felony-firearm sentences, but we vacate defendant's felon-in-possession sentences. We remand for resentencing for defendant's felon-in-possession convictions. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle